PEOPLE v ALLAN

Docket No. 305283. Submitted December 11, 2012, at Lansing. Decided January 10, 2013, at 9:00 a.m. Leave to appeal denied, 494 Mich 863.

David Lee Allan was convicted by a jury in the Jackson Circuit Court of conspiracy to commit extortion, MCL 750.157a; MCL 750.213. Before jury selection, the clerk of the court administered an oath in which the prospective jurors swore to honestly answer all questions about their respective qualifications to be a juror. After the jury was selected, the case proceeded through trial without the jury taking another oath. Defendant was found guilty, and the jury was polled and confirmed the verdict. Defendant appealed, and moved for peremptory reversal and to remand to file a motion in the trial court for an evidentiary hearing and a new trial. He argued that trial counsel had been ineffective and he had been denied due process, in part for failing to object to the trial court's failure to swear in the jury. The Court of Appeals denied defendant's motion for peremptory reversal, but granted defendant's motion to remand in part for an evidentiary hearing and a determination whether the jury was sworn before trial commenced in an unpublished order of the Court of Appeals, entered April 12, 2012 (Docket No. 305283). On remand, the court, John G. McBain, heard testimony and determined that the jury had not been sworn after selection and before trial commenced.

The Court of Appeals *held*:

1. MCR 6.412(F) and MCL 768.14 require that after the jury is selected and before the trial begins, the court must have the jurors sworn. The jury must be sworn in accordance with the oath set forth in MCR 2.511(H)(1). The oath, which must be administered at the beginning of trial in accordance with statute and court rule, protects the fundamental right to a trial by a fair and impartial jury.

2. Unpreserved constitutional claims of error are reviewed for plain error. To avoid forfeiture of an unpreserved claim, the defendant must prove (1) that there was an error, (2) that the error was clear or obvious, and (3) that the plain error affected the outcome of the lower-court proceedings. Reversal is warranted only if the error seriously affected the fairness, integrity, or public

reputation of the judicial proceedings or resulted in the conviction of an actually innocent person. In this case, the trial court plainly erred by failing to swear in the jury as required by Michigan statutes and court rules. The trial court's failure to administer the oath to the jury seriously affected the fairness, integrity, and public reputation of the judicial proceedings because it resulted in an invalid verdict under Michigan law.

3. The failure to swear a jury in a criminal prosecution is a fatal defect. The jury oath is not a mere formality. Rather, the oath required at the beginning of a jury trial is a solemn promise to fulfill the duty to act in accordance with the law at all stages of a trial and a mechanism to ensure that jurors decide the case honestly in accordance with the law and on the basis of the evidence presented. The oath is designed to protect the fundamental right of trial by an impartial jury.

4. Constitutional error is either structural or nonstructural. Nonstructural error typically occurs during the presentation of the case to the jury and may be quantitatively assessed in the context of the other evidence presented. In contrast, structural error is a defect that affects the framework of the trial, infects the truth-gathering process and deprives the trial of constitutional protections without which the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. An error is structural only when it necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. A structural error is intrinsically harmful without regard to whether an error affected the outcome of a defendant's trial. In this case, the trial court's failure to swear in defendant's jury before trial was a structural error. Because administration of the oath is necessary to ensure the fundamental right to trial by an impartial jury, the failure to administer the oath necessarily renders the criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. It is a defect that affects the framework within which the trial proceeds. That the failure to swear in the jury was a structural error is also supported by the fact that because the jury was never sworn, jeopardy never attached in this case, and defendant can be retried for the same offenses. The plain structural error satisfied the third prong of unpreserved constitutional review without regard to the error's effect on the outcome of defendant's trial. When a defendant is convicted by an unsworn jury, the proper remedy is reversal of the defendant's conviction and remand for a retrial.

Conviction reversed and case remanded for a new trial.

CONSTITUTIONAL LAW — JURY — OATH — FAILURE TO ADMINISTER.

The failure to swear in a jury in a criminal prosecution by administering the oath required by MCL 768.14, MCR 2.511(H)(1), and MCR 6.412(F) before trial begins is a fatal defect that requires automatic reversal of the defendant's convictions and remand for a new trial.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Henry C. Zavislak* Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*) for defendant.

Before: WHITBECK, P.J., and FITZGERALD and BECKERING, JJ.

PER CURIAM. An unsworn jury convicted defendant, David Lee Allan, of conspiracy to commit extortion, MCL 750.157a; MCL 750.213. Defendant appeals as of right, arguing, among other things, that the trial court committed plain error that requires reversal by failing to swear in the jury. We conclude that the trial court plainly erred by failing to swear in the jury, which both court rule and statute require to protect the constitutional right to a trial by a fair and impartial jury. We also conclude that the trial court's error was structural because the absence of a sworn jury rendered defendant's trial fundamentally unfair and an unreliable vehicle for determining guilt or innocence. Finally, defendant's trial by an unsworn jury seriously affected the fairness, integrity, and public reputation of the judicial proceedings because it rendered the jury's verdict invalid under Michigan law. We, therefore, hold that defendant is entitled to relief under the plain-error

framework for being tried by an unsworn jury. Accordingly, we reverse and remand for a new trial.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

The prosecution in this case charged defendant with extortion and conspiracy to commit extortion.[1] It was alleged that the victim met defendant's daughter, Jennifer Allan, at a strip club in summer 2010 and that the two engaged in consensual, unprotected sexual intercourse at a motel several months later. It was further alleged that after the sexual encounter, defendant and Jennifer threatened to accuse the victim of raping Jennifer unless he met their continual demands for money.

Before jury selection in this case, the clerk of the court administered the following oath to the prospective jurors: "You do solemnly swear or affirm that you will truthfully and completely answer all questions about your qualifications to serve as jurors in this case, so help you God." The prospective jurors affirmed. After the jury was selected, the case proceeded through trial without the jury taking another oath. The jury found defendant guilty of conspiracy to commit extortion but not guilty of extortion. After the jury returned its verdict, defendant requested that the trial court poll the jury. The clerk of the court then administered the following oath to the jury: "Do you jury foreperson and do each of you other jurors state on your oath that the verdict read by the judge is the verdict of this jury, so say you members of the jury." The jury affirmed. Polling confirmed the jury's verdict. The trial court later sentenced defendant to a term of 10 to 20 years' imprisonment.

Defendant appealed as of right and filed two motions in this Court. Defendant first moved this Court to

---

[1] The prosecution dismissed a charge of prostitution, MCL 750.448.

remand so that he could file a motion in the trial court for a new trial and an evidentiary hearing, arguing that (1) his trial counsel was ineffective for failing to challenge a biased juror for cause, (2) the trial court violated his due-process rights by failing to swear in the jury, and (3) his trial counsel was ineffective for not objecting to the court's failure to swear in the jury. In his second motion, defendant moved this Court to peremptorily reverse his conviction on the basis of the trial court's failure to swear in the jury. We denied defendant's motion for peremptory reversal but granted defendant's motion to remand in part "for an evidentiary hearing and determination whether the jury was sworn before trial commenced."[2] We denied defendant's motion to remand in all other respects and retained jurisdiction.[3]

On remand, the trial court held an evidentiary hearing and received testimony from defendant and defendant's trial counsel. Trial counsel testified that he had no recollection of either the jury being sworn or not being sworn. The trial court then issued an order stating its factual finding that "the jury was not sworn after selection and before trial commenced."

## II. ANALYSIS

### A. FAILURE TO ADMINISTER JURY OATH

Defendant argues that the trial court committed error that requires reversal by failing to give the jury its oath after jury selection.[4] We agree.

---

[2] *People v Allan*, unpublished order of the Court of Appeals, entered April 12, 2012 (Docket No. 305283).

[3] The circuit court register of actions indicated that the jury was sworn, but the trial transcripts contained no record that the jury was sworn

[4] We note that this is a case in which the jury was never sworn, not a case in which the jury was belatedly sworn, e.g., during the presentation

Defendant did not raise this issue before the trial court; therefore, our review is for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture of a constitutional right under the plain-error rule, defendant must prove the following: (1) there was an error, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., the outcome of the lower-court proceedings. *Id.* at 763. Once defendant has established these three requirements, this Court "must exercise its discretion in deciding whether to reverse." *Id.* Reversal is warranted only if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings or resulted in the conviction of an actually innocent person. *Id.* A plain error that affects substantial rights does not necessarily result in the conviction of an actually innocent person or seriously affect the fairness, integrity, or public reputation of judicial proceedings. See *People v Vaughn*, 491 Mich 642, 666-667; 821 NW2d 288 (2012) (holding that the closure of a courtroom during jury selection, a structural error, did not seriously affect the fairness, integrity, or public reputation of judicial proceedings); see also *Johnson v United States*, 520 US 461, 469-470; 117 S Ct 1544; 137 L Ed 2d 718 (1997) (holding that a plain error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings even when the error was assumed to have affected substantial rights).

MCL 768.14 provides that the following oath must be administered to jurors in criminal cases: "You shall well and truly try, and true deliverance make, between the people of this state and the prisoner at bar, whom you shall have in charge, according to the evidence and the

of the evidence to the jury. The latter case would present a different legal issue, which we do not consider today.

laws of this state; so help you God." MCL 768.15 permits substitution of the words "[t]his you do under the pains and penalties of perjury" for "so help you God."

Similarly, MCR 6.412(F) provides that "[a]fter the jury is selected and before trial begins, the court must have the jurors sworn." Under MCR 6.412(A), MCR 2.511 governs the procedure for impaneling the jury. MCR 2.511(H)(1) states the following:

> The jury must be sworn by the clerk substantially as follows:
>
> "Each of you do solemnly swear (or affirm) that, in this action now before the court, you will justly decide the questions submitted to you, that, unless you are discharged by the court from further deliberation, you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the court, so help you God."

We have opined that the oath that must be administered at the beginning of trial pursuant to statute and court rule protects the fundamental right to a trial by a fair and impartial jury. *People v Pribble*, 72 Mich App 219, 224-225; 249 NW2d 363 (1976); see also, generally, US Const, Am XIV; *Groppi v Wisconsin*, 400 US 505, 509; 91 S Ct 490; 27 L Ed 2d 571 (1971).

In this case, the trial court did not administer the oath to the jury as provided for by statute and court rule. The trial court's obligation to do so was clearly established by law. Thus, the trial court's failure to swear in the jury was plain error. See *Carines*, 460 Mich at 763.

With respect to whether the trial court's error affected defendant's substantial rights, defendant argues that the trial court's failure to swear in the jury satisfies the third prong of the plain-error test without regard to its effect on the outcome of his trial because the error was structural. Constitutional error is classified as

either structural or nonstructural. *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000). Nonstructural errors are typically trial errors "occur[ing] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented . . . ." *Arizona v Fulminante*, 499 US 279, 307-308; 111 S Ct 1246; 113 L Ed 2d 302 (1991). In contrast, "[s]tructural errors are defects that affect the framework of the trial, infect the truth-gathering process, and deprive the trial of constitutional protections without which the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *People v Watkins*, 247 Mich App 14, 26; 634 NW2d 370 (2001), aff'd 468 Mich 233 (2003). The United States Supreme Court has found error to be structural "only in a very limited class of cases," *Johnson*, 520 US at 468, including in *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), for a total deprivation of the right to counsel; in *Tumey v Ohio*, 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927), for the lack of an impartial trial judge; in *Vasquez v Hillery*, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986), for the unlawful exclusion of grand jurors of the defendant's race; in *McKaskle v Wiggins*, 465 US 168; 104 S Ct 944; 79 L Ed 2d 122 (1984), for the deprivation of the right to self-representation at trial; in *Waller v Georgia*, 467 US 39; 104 S Ct 2210; 81 L Ed 2d 31 (1984), for the deprivation of the right to a public trial; and in *Sullivan v Louisiana*, 508 US 275; 113 S Ct 2078; 124 L Ed 2d 182 (1993), for an erroneous reasonable-doubt instruction to the jury.

The Court has typically characterized errors as structural "only when the error necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Rivera v Illinois*, 556 US 148, 160; 129 S Ct 1446; 173 L Ed 2d

320 (2009) (quotation marks and citation omitted; alteration in the original). The United States Supreme Court "has specifically reserved judgment on whether an unpreserved structural error automatically affects a defendant's substantial rights . . . ." *Vaughn*, 491 Mich at 666. However, our Supreme Court has opined that a structural error is intrinsically harmful without regard to whether the error affected the outcome of a defendant's trial. *Duncan*, 462 Mich at 51. Accordingly, in *Vaughn*, 491 Mich at 666, the Court recognized that Michigan caselaw "suggests that a plain structural error satisfies the third *Carines* prong."

In *Pribble*, this Court opined that "the failure in a criminal prosecution to swear the jury is regarded as a fatal defect." *Pribble*, 72 Mich App at 225 (quotation marks and citation omitted). The trial court in *Pribble* sua sponte granted the defendant a mistrial after it discovered during the presentation of the prosecution's case-in-chief "that the jury had not been given its oath prior to commencement of the proceedings." *Id*. at 221. The defendant was then given a second trial, and he was convicted. *Id*. at 222. The defendant appealed his conviction, arguing that it was prohibited by the Double Jeopardy Clauses of the United States and Michigan Constitutions, US Const, Am V; Const 1963, art 1, § 15. *Id*. We rejected the defendant's argument and affirmed his conviction, holding that the trial court's failure to swear the jurors in before the beginning of the defendant's first trial was a "fatal defect" that would have rendered invalid a resulting conviction in the first trial. *Id*. at 225-226. In so holding, we recognized that the right to be tried by an impartial jury was a constitutional guarantee and further opined as follows:

> The required oath is not a mere "formality" which is required only by tradition. The oath represents a solemn

promise on the part of each juror to do his duty according to the dictates of the law to see that justice is done. This duty is not just a final duty to render a verdict in accordance with the law, but the duty to act in accordance with the law at all stages of trial. The oath is administered to insure that the jurors pay attention to the evidence, observe the credibility and demeanor of the witnesses and conduct themselves at all times as befits one holding such an important position. The oath is designed to protect the fundamental right of trial by an impartial jury. [*Id.* at 224.]

Accordingly, we explained that any conviction resulting from an unsworn jury was subject to being overturned on appeal. *Id.* at 225.

In *People v Clemons*, 177 Mich App 523, 528-530; 442 NW2d 717 (1989), we reaffirmed the legal principles discussed in *Pribble*. The defendant's first trial in *Clemons* properly began with the trial court administering the oath to the jurors. *Id.* at 529. The trial court subsequently granted the defendant a mistrial on unrelated grounds and began a second trial with 10 of the defendant's original jurors and 2 new jurors. *Id.* However, at the start of the second trial, the trial court only administered the oath to the 2 new jurors and failed to administer the oath to the original 10 jurors. *Id.* We held that the original 10 jurors should have been given the oath at the start of the second trial because the declaration of a mistrial rendered all prior trial proceedings invalid. *Id.* Because the defendant's second trial was conducted with 10 unsworn jurors, we reversed the defendant's conviction and remanded the case for a new trial. *Id.* at 530. In so holding, we reaffirmed *Pribble*, emphasizing that "[t]he required oath is necessary to protect the defendant's fundamental right of trial by an impartial jury." *Id.* at 529-530, citing *Pribble*, 72 Mich App at 224.

Our decisions in both *Pribble* and *Clemons* recognized that the oath required at the beginning of a jury trial is both a solemn promise to fulfill the duty to act in accordance with the law at all stages of a trial and also a mechanism to ensure that jurors decide the case honestly in accordance with the law and on the basis of the evidence presented. *Clemons*, 177 Mich App at 528-529; *Pribble*, 72 Mich App at 224. While these opinions are not binding decisions of this Court,[5] we conclude that they were correctly decided.

Administering the oath to the jury is not a mere formality. *Pribble*, 72 Mich App at 224; *Clemons*, 177 Mich App at 528. It is a "long-standing common law requirement." *Harris v State*, 406 Md 115, 124; 956 A2d 204 (2008); see also *Owens v State*, 399 Md 388, 408-409; 924 A2d 1072 (2007) (explaining that when a criminal jury began to assume a form recognizable to us under the reign of King Henry II, it was a sworn jury); *State v Ballen*, 333 SC 378, 380; 510 SE2d 226 (SC App, 1998) ("The requirement for and form of the jury oath in South Carolina apparently originated in the common law."); *State v Duff*, 253 Mo 415; 161 SW 683 (1913) (noting that the jury-oath requirement originated in part from the common law); *State v Johnson*, 37 La Ann 421, 422 (1885) (referring to a common-law oath to be taken by jurors); *Minich v People*, 8 Colo 440, 450; 9 P 4 (1885) (referring to a common-law jury oath); *Fitzhugh v State*, 81 Tenn 258, 265 (1884) (referring to a common-law oath to be taken by jurors); *State v Davis*, 52 Vt 376, 381 (1880) (noting that, at common law, a jury is not empaneled until an oath is administered); *Beale v Commonwealth*, 25 Pa 11, 17 (1855) (articulating the common-law form of a juror's oath in criminal cases). The Vermont Supreme Court opined as follows:

---

[5] See MCR 7.215(J)(1).

> This [criminal jury] oath is not only a summary of the duties of the jurors, but is also the only security which the State and the respondent have for a faithful, fearless discharge of those duties. It has been so regarded for many centuries. By the common law, in a criminal case the jury is not regarded as impanelled until the oath is administered. The general, if not universal, current of the decisions hold that a trial by an unsworn jury is a mistrial. It is not a legal trial, a right which every respondent is entitled to have accorded him. [*Davis*, 52 Vt at 381.]

More than a century later, the Maryland Court of Special Appeals emphasized that the administration of the jury oath remains an essential ingredient to a legally constituted jury and explained that "[i]n those states where the matter has been considered, the courts have, almost unanimously, held that the concepts of waiver and harmless error have no application when the jury was *never* sworn." *Harris*, 406 Md at 127, 129. Since then, this Court and other jurisdictions have held that a trial by an unsworn jury results in an invalid conviction. See, e.g., *Pribble*, 72 Mich App at 224-225; *Clemons*, 177 Mich App at 528-530; *Duff*, 161 SW at 685 (explaining that courts have uniformly held that the failure to have the jury sworn requires that a verdict be set aside); *Brown v State*, 220 SW3d 552, 554 (Tex App, 2007) ("There is little doubt that a complete failure to administer the jury oath renders the jury's verdict a nullity and is reversible error."); *Spencer v State*, 281 Ga 533, 534; 640 SE2d 267 (2007) (explaining that a conviction by an unsworn jury is a nullity); *Ex Parte Benford*, 935 So 2d 421, 429 (Ala, 2006) (stating that failure to administer the oath to the jury renders the jury's verdict a nullity); *People v Pelton*, 116 Cal App Supp 789, 790-791; 7 P2d 205 (1931) (stating that a conviction by an unsworn jury is a nullity).

Moreover, we have emphasized that administering the oath to jurors is *"necessary* to protect the . . . fundamental right of trial by an impartial jury." *Clemons*, 177 Mich App at 529-530, citing *Pribble*, 72 Mich App at 224 (emphasis added). Because administration of the oath is *necessary* to ensure the fundamental right to trial by an impartial jury, it necessarily follows that the failure to administer the oath *"necessarily* render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Rivera*, 556 US at 160 (quotation marks and citation omitted, alteration in original, and emphasis added); see also *Neder v United States*, 527 US 1, 8-9; 119 S Ct 1827; 144 L Ed 2d 35 (1999). Failure to administer the oath to the jury is not an error "occur[ing] during the presentation of the case to the jury" that may "be quantitatively assessed in the context of other evidence presented . . . ." *Fulminante*, 499 US at 307-308. Rather, it is a defect that affects the framework within which the trial proceeds. See *Watkins*, 247 Mich App at 26; see also *Neder*, 527 US at 8-9. Failing to administer the oath "deprive[s] the trial of constitutional protections without which the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Watkins*, 247 Mich App at 26.

Significantly, there is another reason to support the conclusion that failure to swear in a jury is structural error. Under the Double Jeopardy Clauses of the United States and Michigan Constitutions, "an accused may not be put in jeopardy twice for the same offense." *People v Grace*, 258 Mich App 274, 278; 671 NW2d 554 (2003). It is well established that jeopardy attaches when the jury is selected and sworn. *Id.* at 279; *Crist v Bretz*, 437 US 28, 36, 38; 98 S Ct 2156; 57 L Ed 2d 24 (1978). In the event that an unsworn jury returns a verdict, a defendant may be tried again for the same

offense because jeopardy never attached. See *Spencer*, 281 Ga at 533-535 (holding that a not guilty verdict by an unsworn jury did not bar retrial on the same charge because the jury was without authority to render a verdict and jeopardy never attached). That jeopardy has not even attached in this case further supports our conclusion that the error is structural in nature.

Accordingly, we hold that the trial court's failure to swear in the jury was structural error. Furthermore, Michigan caselaw "suggests that a plain structural error satisfies the third *Carines* prong." *Vaughn*, 491 Mich at 666; see generally *Duncan*, 462 Mich at 51 (stating that structural errors are intrinsically harmful without regard to their effect on the outcome). Thus, we conclude that the plain structural error in this case satisfies the third *Carines* prong without regard to the error's effect on the outcome of defendant's trial.

Finally, we conclude that the trial court's failure to administer the oath to the jury seriously affected the fairness, integrity, and public reputation of the judicial proceedings. See *Carines*, 460 Mich at 763-764. Because the trial court did not administer the oath to the jury, the jury did not undertake the solemn promise to act in accordance with the law at all stages of defendant's trial. The trial court's failure to administer the oath to the jury in this case affected the integrity of the proceedings because it resulted in an invalid verdict under Michigan law. *Id.*; *Pribble*, 72 Mich App at 224-225; *Clemons*, 177 Mich App at 528-530. The absence of the oath deprived defendant of a means to ensure that the jury would decide the case honestly in accordance with the law and on the basis of the evidence. Administration of the oath was necessary to protect defendant's fundamental right to a trial by an impartial jury.

Accordingly, defendant's claim of error satisfies the requirements of the plain-error test, and we will exercise our discretion to afford defendant relief. See *id.* When a defendant is convicted by an unsworn jury, the proper remedy is reversal of the defendant's convictions and remand for a new trial. See *Clemons*, 177 Mich App at 530. Retrial in this case is permitted because the jury was not sworn and jeopardy, therefore, did not attach. See *Grace*, 258 Mich App at 279; see also *Crist*, 437 US at 36, 38.

### B. REMAINING ISSUES

Defendant raises several other issues on appeal. However, our decision to reverse defendant's conviction and remand for a new trial on the basis of the trial court's failure to swear in the jury makes it impossible to grant any further relief to defendant. Accordingly, defendant's remaining arguments are moot. See *People v Billings*, 283 Mich App 538, 548; 770 NW2d 893 (2009). However, we will briefly address two of defendant's remaining claims to guide the parties and the court on remand.[6]

With regard to defendant's contention that the trial court erroneously excluded Jamie Pickering's testimony about Jennifer's scheme to have her boyfriends impersonate defendant over a telephone to obtain money in a brain-surgery scheme, we conclude that the trial court did not abuse its discretion when it ruled that the testimony was inadmissible under MRE 404(b) and MRE 403. Evidence that Jennifer had her boyfriends call people, impersonate defendant, and request money for a brain surgery for Jennifer that she was not

---

[6] We do not address defendant's claim of ineffective assistance of counsel for failure to challenge a juror for cause.

getting is too dissimilar to the scheme in the present case to be logically relevant for purposes of MRE 404(b). See *People v Sabin (After Remand)*, 463 Mich 43, 63-68; 614 NW2d 888 (2000). Moreover, even if the testimony was logically relevant to illustrate a common plan or scheme, its probative value was substantially outweighed by the danger of unfair prejudice. See MRE 403. Admission of the testimony would have detracted from the material issues in this case and unnecessarily diverted attention to if and how a different scheme to extort money occurred. Finally, Pickering's testimony was not admissible under MRE 613(b) as extrinsic evidence of a prior inconsistent statement by Jennifer because Jennifer did not testify regarding her boyfriends impersonating defendant on occasions outside this case; she only testified that she never had her boyfriends impersonate defendant when attempting to obtain money from *the victim in this case*.

We conclude that the trial court's refusal to allow defendant to cross-examine Jennifer about the 20-year maximum penalty for her extortion charge that the prosecution dropped in exchange for her testimony at trial was likewise not an abuse of discretion. Permitting this cross-examination would have informed the jury of the maximum sentence that defendant faced for extortion; "[t]he general rule is that the jury should not normally be informed of possible punishment if a defendant is convicted." *People v Mumford*, 183 Mich App 149, 151; 455 NW2d 51 (1990) (quotation marks and citation omitted). Although *Mumford* illustrates that this general rule must yield to a defendant's right to confrontation in certain circumstances, the present case is factually distinguishable from *Mumford* because the trial court in this case did not preclude defendant from cross-examining Jennifer on "*all of the details* of [her] plea bargain." *Id.* at 154 (emphasis added). In-

deed, the trial court permitted extensive cross-examination with regard to Jennifer's plea bargain to reveal bias.

### III. CONCLUSION

We hold that defendant's conviction must be reversed and this case remanded for a new trial because the jury was never sworn. The trial court plainly erred by failing to administer the oath; the court's obligation to do so was clearly established by court rule and statute to protect the constitutional right to a fair and impartial jury. Furthermore, the error was structural and, therefore, intrinsically harmful without regard to its effect on the outcome of defendant's trial. The oath is not a mere formality; rather, it is a long-standing common-law requirement that is necessary to protect defendant's constitutional right to a trial by an impartial jury. The failure to administer the oath necessarily rendered defendant's trial fundamentally unfair and an unreliable vehicle for determining guilt or innocence. Finally, the trial court's failure to administer the oath to the jury seriously affected the fairness, integrity, and public reputation of the judicial proceedings because it resulted in an invalid verdict under Michigan law. For this reason, defendant is entitled to relief under the plain-error framework.

We reverse and remand for a new trial with a properly sworn jury. We do not retain jurisdiction.

WHITBECK, P.J., and FITZGERALD and BECKERING, JJ., concurred.