# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
May 21, 2015

v

KEVIN J. MOORE,

      Defendant-Appellant.

No. 318661
Wayne Circuit Court
LC No. 00-005882-FC

Before: WILDER, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Kevin J. Moore, appeals by right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced Moore to serve life in prison without the possibility of parole for the murder conviction, to serve a concurrent term of three to five years in prison for the felon-in-possession conviction, and to serve a consecutive two-year term for the felony-firearm conviction. Because we conclude there were no errors warranting relief, we affirm.

Moore's convictions arise out of the shooting death of Hyshanti Johns in April 2000. A jury previously convicted him of the same charges in April 2001, and this Court affirmed in a prior appeal.[1] In *Moore v Berghuis*, 700 F3d 882 (CA 6, 2012), the Court of Appeals for the Sixth Circuit granted Moore's petition for a writ of habeas corpus after determining that Moore's custodial statements were improperly admitted at trial and that the error was not harmless. *Id*. at 888-890. The prosecutor retried Moore in August 2013 and the jury again convicted him.

Moore now appeals in this Court.

---

[1] See *People v Moore*, unpublished opinion per curiam of the Court of Appeals, issued June 19, 2003 (Docket No. 236015).

## I. UNAVAILABLE WITNESS

Moore first argues the trial court erred when it allowed the prosecution to read the testimony by his former girlfriend, Sharita Hutson, into the record contrary to MRE 804 and his right to confront the witnesses against him. Specifically, he maintains, the trial court erred when it found that Hutson was unavailable. This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). But we review de novo any legal issues regarding admissibility. *Id.* at 723. Finally, we review for clear error the trial court's factual findings underlying its application of constitutional law. *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010).

If a witness is unavailable to testify, a party may admit the witness' testimony from "another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or . . . a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1). A witness is unavailable if he or she is absent and the "proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). Similarly, the admission of prior testimony does not violate a defendant's right to confront the witnesses against him or her if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008).

During a pretrial hearing, the prosecutor called five witnesses who confirmed that Hutson had spoken with her relatives about the upcoming trial. Hutson's sister provided investigators with Hutson's contact information, two investigators spoke to Hutson on the phone and Hutson told one that she would not be appearing for trial. Multiple investigators looked for Hutson without success at each of her identified former addresses. Although an investigator learned on the first day of trial that Hutson had used her Bridge card in east Detroit, and Moore's trial lawyer protested that the prosecutor could have further investigated the recent Bridge card use, we conclude that the trial court did not clearly err when it found that the prosecutor exercised due diligence and made reasonable efforts to secure Hutson's appearance. There was no evidence that Hutson's use of the Bridge card would have enabled the investigators to locate Hutson within a reasonable time and compel her attendance, especially in light of the evidence that she was evading the investigators' efforts to locate her. On this record, the prosecutor's efforts were reasonable. *Bean*, 457 Mich at 684. The trial court did not err when it found that Hutson was unavailable and did not err when it determined that Moore had had a prior opportunity to cross-examine her; accordingly, its decision to permit the admission of her prior testimony was within the range of reasonable and principled outcomes. *Duncan*, 494 Mich at 722-723.

## II. PRESENTATION OF TESTIMONY

Moore next argues that the manner in which the trial court allowed Hutson's prior testimony to be read violated his right of confrontation because the assistant prosecutor who read Hutson's answers was more "polished," which lent them more credibility, and his trial lawyer interjected inquiries about Moore's custodial statements, which tainted his prior trial. Moore's trial lawyer did not object to the manner in which Hutson's testimony was read. Likewise, with respect to Moore's suggestion that the trial court inadvertently admitted evidence of Moore's prior statement, his lawyer did not object. Because these claims of error are unpreserved, we must review them for plain error affecting Moore's substantial rights. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999).

Moore has failed to identify any authority that a witness' testimony must be read into the record in a particular way and has failed to develop the factual basis for his argument beyond speculating that the person who read Hutson's testimony was more articulate than Hutson. See *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Therefore, he has abandoned this claim of error. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). With respect to his claim that his trial lawyer's reading of the questions posed by his lawyer to Hutson in the first trial, Moore has not demonstrated any error. He merely complains in conclusory fashion that his trial lawyer could not pose "proper questions," but does not explain or develop this claim. *Petri*, 279 Mich App at 413.

Furthermore, Moore has not demonstrated error or prejudice arising from references to his statements during the reading of Hutson's prior testimony. The first purported references occurred during the reading of Hutson's cross-examination. The first portion of Hutson's cross-examination involved questions about whether Hutson was aware of the statement of an unidentified person that Moore had sex with the victim, a matter that tended to cast doubt on Hutson's testimony, which benefited Moore. Several pages after that point in the transcript, the questions turned to whether she had become aware of a statement Moore gave to the police, but included no details of the statement. On redirect examination, the prosecutor asked Hutson whether she had seen Moore's statement before her preliminary examination testimony, but again did not include any details from the statement. The final portions of Hutson's recross-examination mentioned the word statement, but did not suggest that Moore made the statement.

Given that the testimony did not identify anything that Moore might have said in his statement to the officers, we cannot conclude that the failure to redact these questions and answers amount to plain error. Even assuming that the mere mention that Moore gave a statement to officers amounted to error, on this record any error was harmless. Therefore, Moore has not established that this claim warrants relief. *Carines*, 460 Mich at 763.

## III. MOORE'S NONCUSTODIAL STATEMENTS

Moore further asserts that the trial court improperly admitted evidence of alleged statements that he made before his arrest, which the prosecutor failed to disclose. Because his lawyer did not timely object at trial on this ground, we review this issue for plain error. *Carines*, 460 Mich at 763.

The prosecutor moved to admit under MRE 801(d)(2)(A) some noncustodial statements that Moore made when he turned himself in to officers in April 2000. At a hearing, an officer testified about the spontaneous and noncustodial nature of the statements. The trial court correctly determined that these statements were admissible under MRE 801(d)(2)(A) and MRE 403. And Moore has not established that the prosecutor improperly suppressed the statements.

In order to establish that the prosecutor improperly suppressed evidence contrary to the decision in *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the defendant must show that the evidence was favorable, that he or she did not possess the evidence and could not have obtained it with the exercise of reasonable diligence, that the prosecution suppressed the evidence, and that had the evidence been disclosed, there is a reasonable probability that the outcome of the proceedings would have been different. *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998). "[T]he government's failure to preserve potentially exculpatory evidence violates a criminal defendant's due process rights if the defendant can show bad faith on the part of the government." *People v Anstey*, 476 Mich 436, 460-461; 719 NW2d 579 (2006).

Moore has not demonstrated error warranting relief. Moore concedes that "the evidence here was not precisely favorable to" him. *Fox*, 232 Mich App at 550. Although he argues the prosecutor failed to disclose the evidence for 12 years, he does not address how it is that he could not have obtained the evidence through due diligence—especially given that he presumably would know whether he made a statement and the content of the statement. *Id*. at 549. Lastly, he contends that his awareness of the statements in 2000 or 2001 would have facilitated his ability to challenge their admissibility, but nevertheless admits that he made the statements before being taken into custody, MRE 801(d)(2)(A), and identifies no legal theory he could have offered to challenge their admissibility. *Fox*, 232 Mich App at 549-550. He cites only "[t]he chance that . . . witness's memories" might become faulty over time, and identifies no specific harm that he suffered. *Id*. at 550. Therefore, this claim of error does not warrant relief.

## IV. PROSECUTORIAL ERRORS

Moore also argues that the prosecutor erred in several respects, which prejudiced his trial. Because these claims of error are unpreserved, we must review them for plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). We review claims of prosecutorial error case by case to determine whether the defendant received a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

### A. REFERENCE TO DNA EVIDENCE

Moore first argues that the prosecutor improperly referred to DNA evidence in rebuttal. In her closing argument, Moore's trial lawyer criticized the strength of the DNA evidence that was more than 10 years old at the time of the retrial. The prosecutor responded that the DNA evidence was still very powerful evidence:

Poor innocent Mr. Moore, just so happens four out of eight—and he's lucky he did it in 2000 because [if] it was twenty-one, we might have sixteen out of twenty-one. And that result of 1.64 million might exceed[] the current population of the planet . . . .

Somehow the fact that the eight loci are used at that time . . . we're supposed to give him some benefit of that.

The prosecutor's rebuttal properly argued the evidence and the reasonable inferences to be drawn from it. See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Stephanie Trahey, a DNA expert, testified that she could not exclude Moore as a contributor to four of the eight DNA loci she analyzed in 2000; she also testified that current, more advanced DNA testing examined 15 or 21 DNA loci. In response to defense counsel's criticism of the more limited number of DNA loci tested in 2000, the prosecutor reasonably argued that DNA analysis of the same evidence today might reveal more matches. *Unger*, 278 Mich App at 238 (recognizing that an otherwise improper prosecutorial remark might be proper when made in response to an argument by the defense). Finally, even assuming some impropriety, the trial court repeatedly instructed the jury that the attorneys' arguments did not constitute evidence, and juries presumably follow the court's instructions. *Id.*

## B. COMMENT ON MOORE'S SILENCE

Moore next argues the prosecutor improperly referenced his silence during his opening statement:

We don't have to prove a motive. All of you could collectively listen to the evidence, come out and say . . . the Prosecution and the Detroit Police Department proved those elements, and you can collectively . . . all scratch your heads until your dying day as to why. And if you think about that, a lot of times the only two people that know the why, and one of them has been hit four times and can't tell us and can't bring her back, and *the other person is a somebody that I can't call as a witness. He has a constitutional right*. [Emphasis added.]

Moore presumably alludes to the recognition that a prosecutor's reference to "a defendant's silence . . . deprives a defendant of due process when the government has given the defendant a reason to believe both that he has a right to remain silent and . . . his invocation of that right will not be used against him." *People v Borgne*, 483 Mich 178, 187-188; 768 NW2d 290 (2009). However, the prosecutor's statement did not amount to a prohibited reference to Moore's right to remain silent, but instead correctly referred to his constitutional right not to testify. See *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004). Moore ultimately elected not to testify, and the trial court accurately instructed the jury that "[e]very defendant has the absolute right not to testify. When you decide the case, you must not consider the fact that he did not testify. It must not affect your verdict in any way." Even if it were error for the prosecutor to note Moore's right not to testify, the trial court's instruction cured any prejudice. *Unger*, 278 Mich App at 235.

## C.  IMPROPER VOUCHING

Moore additionally contends that the prosecutor improperly vouched for the prestige of the prosecutor's office, as reflected in the following excerpt:

> There is abundant evidence with Sharita Hutson alone, and her testimony is supported in a multitude of ways.  All of that evidence mandates, dictates, stipulates, demands a conviction against Mr. Moore for what he did to Ms. Johns.  That, the law calls premeditated first degree murder.  That, the law calls felon in possession and felony firearm.
>
> *On the bottom of the Information and in every Information above Miss. Worthy's signature*, on every Information filed in every county in all eighty-three counties in the state, Miss Worthy comes to inform the Court of the three Counts, premeditated, felon in possession, felony firearm, the date and time, happened in Wayne County, and on every form it says against the peace and dignity of the people of the State of Michigan.
>
> Mr. Moore has done untold damage to those people.  He's also damaged the people of the State of Michigan by his behavior.  We're not asking for anything charitable here.  *We've proven it to you.*  Consistent with all that evidence, we ask that you convict him as charged.  [Emphases added.]

Although it was arguably improper to speak of the information and the signatory, the prosecutor did not suggest to the jury "that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully." *Bahoda*, 448 Mich at 276 (internal quotation and citation omitted).  Moreover, despite the unnecessary references, the prosecutor properly summarized the evidence introduced and argued he had satisfied the burden of proof.  Because the references were not particularly egregious and did not imply that the government had some special knowledge, we conclude that any error did not prejudice Moore.  Accordingly, the error—if any—would not warrant relief.  *Watson*, 245 Mich App at 588.

## D.  REFERENCE TO FIRST TRIAL

Moore lastly maintains the prosecutor and the trial court erred in mentioning before the jury defendant's first trial.  He speculates that the jury might assume that the earlier trial ended in convictions, which in turn might lead it to wonder whether the first trial included "evidence (such as Mr. Moore's uncounselled statement) that they were not privy to," which in turn "may have led them to weigh the evidence in favor of guilt."  However, Moore has again abandoned the claim of error by failing to develop it on appeal.  *Payne*, 285 Mich App at 195.  In any event, we are convinced that the references did not prejudice Moore because the trial court correctly instructed the jury that "[s]ometimes a case must be retried before a new jury, and you should not pay attention to the fact that this is the second trial.  Your verdict must be based only on the evidence in this trial.  You must decide the facts only from what you yourself hear and see."  See M Crim JI 2.21.  This instruction cured any prejudice.  *Unger*, 278 Mich App at 235.

## V. EXCLUSION OF EVIDENCE

Moore argues the trial court erred in granting the prosecutor's motion to preclude references to the closing of the Detroit Police Crime Laboratory, which prejudiced his ability to question the prosecutor's witnesses. The prosecutor filed a motion in limine requesting that the trial court "preclude questions disparaging the Detroit Police Department Crime Lab." He explained that a forensic scientist formerly employed by the Detroit Police Forensic Laboratory had performed a DNA analysis of some physical evidence in the case, and no DNA analysis methods employed in the laboratory had ever drawn formal criticism or questioning. Defendant and the trial court then agreed that Moore could ask the forensic scientist relevant questions about her education and experience.

The prosecutor elicited testimony regarding Trahey's education, experience, and qualifications. The parties stipulated that Trahey possessed sufficient expertise in DNA analysis. The prosecutor also questioned Trahey regarding whether the Detroit laboratory's DNA analysis unit ever received accreditation. Trahey denied that the laboratory had earned an accreditation in DNA analysis during her tenure, but testified that the unit was then pursuing accreditation, and later won accreditation by an independent advisory board.

We conclude that the trial court acted within its discretion in precluding any references to the closing of the Detroit Police Crime Laboratory. Although Moore characterizes the record as silent with respect to the basis for the trial court's evidentiary ruling, the record shows that the trial court was concerned that there was no factual support for a defense reference to the closing of the laboratory. At trial, Moore's lawyer identified no evidence and offered no proof that the closing involved the DNA division. Furthermore, the trial court agreed that Moore's lawyer could cross-examine Trahey about her credentials and qualifications, about whether the Detroit Crime Laboratory held any certifications, and concerning whether anyone had contested Trahey's DNA analysis. Moreover, Moore fails to specifically explain how the evidentiary ruling adversely affected his cross-examination, or otherwise prejudiced his trial. On this record, the trial court's decision was within the range of reasonable and principled outcomes. *Duncan*, 494 Mich at 722-723.

## VI. JURY OATH

Moore next complains that the stenographer at the retrial did not transcribe the content of the oath administered to the jury. And although he did not object to the content at trial, he argues that his inability to examine the exact language used to swear in the jury amounts to structural error. We review unpreserved claims of error for plain error. *Carines*, 460 Mich at 763.

A trial court's complete failure to swear in the jury constitutes structural error that satisfies the prejudice prong of the plain error test. *People v Allan*, 299 Mich App 205, 218; 829 NW2d 319 (2013). Moreover, the court in *Allan* held that the complete failure to swear in the jury invalidates the jury's verdict under Michigan law and, for that reason, affects the fairness and integrity of the proceeding. *Id.*

This case is factually distinguishable from *Allan*. In *Allan*, the transcripts showed that the trial court completely failed to have the jury sworn. *Id*. at 209 n 3. The relevant Michigan cases that this Court considered in *Allan* also involved a failure to administer the jury oath, *People v Pribble*, 72 Mich App 219, 221; 249 NW2d 363 (1976), and a failure to swear in for a second time 10 jurors the trial court had sworn in before it declared a mistrial, *People v Clemons*, 177 Mich App 523, 529-530; 442 NW2d 717 (1989).

Here, the transcript shows that the clerk administered an oath to the jury before trial, but the oath itself was not transcribed. The trial court also accurately instructed the jury regarding its obligation to find the facts on the basis of the evidence, the prosecution's burden of proof, and the responsibility of the jury to follow the court's instructions on the law. In the final instructions, the court advised the jury: "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law. You must not let sympathy or prejudice influence your decision." See M Crim JI 3.1. Thus, the record convincingly shows that the members of the jury were actually sworn and there is record evidence that the oath involved the elements stated under MCR 2.511(H)(1). However, we are unable to state with certainty whether the wording complied with the law because the oath was not transcribed. See MCL 768.14; MCR 6.412(A); MCR 2.511(H)(1). Although we caution trial courts to ensure that the exact wording of the oath is properly recorded for later review, we do not agree that the failure to transcribe the oath amounts to plain error that invariably satisfies the plain error test, as is the case when the trial court completely fails to have the jury sworn. See *Allan*, 299 Mich App at 218. Rather, we conclude that the failure to transcribe the oath, where there is otherwise evidence that the jury was sworn, amounts to plain error akin to the improper closing of the courtroom discussed by our Supreme Court in *People v Vaughn*, 491 Mich 642; 821 NW2d 288 (2012). In *Vaughn*, 491 Mich at 666-667, our Supreme Court held that the prejudice from an unpreserved structural error might not always warrant a new trial:

> Nevertheless, even if defendant can show that the error satisfied the first three *Carines* requirements, we must exercise discretion and only grant defendant a new trial if the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Although denial of the right to a public trial is a structural error, it is still subject to this requirement. While any error that is structural is likely to have *an* effect on the fairness, integrity or public reputation of judicial proceedings, the plain-error analysis requires us to consider whether an error *seriously* affected those factors. [internal quotations, ellipses, and citations omitted.]

Although the error in this case is intrinsically harmful, we cannot conclude either that Moore arguably was actually innocent or that the missing transcription "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 666. There was strong evidence that Moore shot and killed Johns and the record shows that the trial court actually had the jury sworn. Moreover, the record shows that, when the trial court instructed the jury, it tended to use the correct language, which suggests that it employed the oath required by law. Under the totality of these circumstances, we conclude that the plain error does not warrant relief. *Carines*, 460 Mich at 763.

## VI. INEFFECTIVE ASSISTANCE

Moore finally argues that his trial lawyer did not provide effective assistance. Because the trial court did not hold an evidentiary hearing on the ineffective assistance claim, our review is limited to errors apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 786 (2012). In order to establish his claims, Moore must identify an act or omission by his trial lawyer that fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for his trial lawyer's unprofessional errors, the result of the proceeding would have been different. *Id.* at 22. This Court reviews de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Id.* at 19-20.

Moore asserts that he asked his lawyer to call as a defense witness Marcus Byrd, who was also a prosecution witness. He argues the limitations on cross-examination prevented his lawyer from eliciting "pertinent evidence exonerating" Moore. But Moore fails to explain with specificity what testimony his lawyer could have elicited on direct examination. Because he failed to establish the factual predicate for this claim of error, we cannot conclude that his trial lawyer's decision not to call Byrd as a witness fell below an objective standard of reasonableness or prejudiced his trial. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (explaining that the defendant bears the burden of establishing the factual predicate for his claim).

Moore also complains that his lawyer should have filed a motion to preclude references to his criminal history. He asserts that he endured substantial prejudice arising from the failure to move to exclude any reference to his criminal history and instead stipulate that he had a prior felony conviction. The record, however, show that the parties stipulated that Moore "had been convicted of a felony and . . . [was] ineligible to legally possess or use a firearm," and his "right to possess a firearm had not been restored pursuant to Michigan law." Given this stipulation, Moore's trial lawyer might reasonably conclude that it was unnecessary to additionally move to preclude any reference to Moore's criminal history. Accordingly, we cannot conclude that this decision fell below an objective standard of reasonableness under prevailing professional norms. See *Gioglio*, 296 Mich App at 22-23. Moore similarly has not established that his lawyer's stipulation altered the outcome of his trial. See *People v Swint*, 225 Mich App 353, 377-379; 572 NW2d 666 (1997).

Moore next argues that his lawyer's failure to request a hearing on the statement he made when turning himself in to officers amounted to ineffective assistance. Specifically, he maintains that had his lawyer moved for an evidentiary hearing he "could have rebutted" the testimony concerning the statements he made while "walking into the homicide unit." A defendant may request an evidentiary hearing to challenge the knowing and voluntary nature of his custodial statements. *People v Walker (On Rehearing)*, 374 Mich 331, 338-339; 132 NW2d 87 (1965). The trial court held a pretrial hearing at which an officer testified about Moore's noncustodial, unsolicited statements when he appeared at police headquarters. Given the evidence concerning his statements, it is unlikely that Moore's testimony at the hearing would have altered the trial court's ruling to admit the statements under MRE 801(d)(2)(A), especially in light of the available testimony of a second officer who described Moore's appearance at police headquarters in a manner that tended to support the other officer's testimony that Moore

made the statements spontaneously and voluntarily. Moore's lawyer could reasonably conclude that requesting a hearing on the statements would not benefit Moore and elect, as a matter of trial strategy, to focus on discrediting the officer's version of events. And we will not second-guess matters of reasonable trial strategy. See *Gioglio*, 296 Mich App at 22-23.

Moore next complains that his lawyer should have arranged to have him in civilian clothing at the evidentiary hearing on August 9, 2013, and his presence in jail clothing "made the officer [sic] testimony more credible to her identification of defendant." A defendant ordinarily should not appear before juries wearing any indicia of current incarceration because the exposure could prejudice his or her right to a fair trial. *Payne*, 285 Mich App at 185-187. But the proceeding about which Moore complains comprised a motion hearing before the trial court. Because Moore did not appear before a jury, his lawyer could reasonably conclude that it was unnecessary to have him appear in civilian garb. *Gioglio*, 296 Mich App at 22-23.

Moore additionally argues that his lawyer should have objected "to the reading of the second degree murder instruction" where the verdict form "was defective because of not having a not guilty" option for the second-degree murder charge. Because the trial court's instructions and the verdict form properly contained options in count one for either not guilty, guilty of first-degree premeditated murder, or guilty of second-degree murder, Moore has not established that his lawyer unreasonably failed to object. *People v Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005) (noting that counsel need not pursue a meritless position).

Moore argues that his lawyer was ineffective in arranging for the unannounced appearance of a substitute lawyer, William Winters, the lawyer who represented him at his first trial. However, Moore twice expressed on the record his consent to the substitution, and the federal appellate court's reversal of his convictions had nothing to do with Winters' representation. Even assuming that Moore has not waived appellate review of this claim, he has not demonstrated any objectively unreasonable failure by his lawyer or any likelihood that the substitution altered the outcome of the trial. *Gioglio*, 296 Mich App at 22.

Moore lastly avers that his lawyer did not adequately prepare for trial because she only visited him "once inside the county jail" for "less than 15 minutes, and all other visits was [sic] for less than 30 seconds before any trial proceedings." Moore entirely fails to identify any specific lack of trial preparation by defense counsel in investigating the case, or any potential defenses or witnesses. *Hoag*, 460 Mich at 6. Furthermore, the record reflects that at the first pretrial hearing, his lawyer explained her readiness to defend, stating: "I met with Mr. Moore's [federal] appellate counsel in New York last week to go over the case with him to make sure that I would be able to handle it, and we decided that I could, and the court has agreed to appoint me to represent him." She also mentioned that the prosecutor "has given me copies of the transcripts and the discovery materials from the original case," and the trial commenced more than three months later. Thus, Moore's trial lawyer had ample time and material with which to prepare. There is simply no record evidence that his lawyer made any "strategic choices . . . after less than complete investigation." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (internal quotation and citation omitted).

There were no errors warranting relief.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly