# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLEOPHIS HALL,

        Defendant-Appellant.

UNPUBLISHED
June 18, 2015

No. 319729
Genesee Circuit Court
LC No. 12-031247-FC

Before: STEPHENS, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to concurrent prison terms of life in prison for the murder conviction and 4 to 10 years for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. FACTS

Defendant's convictions arise out of the fatal shooting of his live-in partner, Joyce Nelson, outside their shared Flint home early in the morning of June 21, 2012. Neighbors Emma Hasan and her nephew, Rashid Scott, heard gunshots and looked out their window. They saw Nelson lying on the ground, bleeding and trying to move or get up. Scott saw defendant drop a shotgun on the ground and drive away in a red SUV. Two other neighbors, Pearlane and Andre Purnell, also saw Nelson shortly after she was shot. Nelson died from shotgun wounds to her chest. Defendant drove to a police station. He was unresponsive and covered in blood, an officer called for an ambulance. Defendant was transported to Hurley Hospital for a psychiatric evaluation and treatment of chronic obstructive pulmonary disease (COPD). Police officers later interviewed defendant at the hospital. Defendant admitted shooting Nelson, but claimed that he shot her accidently while trying to protect her from a group of 25 to 50 people who were trying to kidnap her. None of the neighbors observed anyone else in the area other than defendant.

## II. EVIDENTIARY ISSUES

-1-

Defendant raises several claims of evidentiary error. We review preserved claims for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Decisions concerning a preliminary question of law, such as the interpretation of the Michigan Rules of Evidence, are reviewed de novo. *Dobek*, 274 Mich App at 93. Unpreserved claims of evidentiary error are reviewed for plain error affecting defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

## A. EXCLUSION OF EVIDENCE OF NEIGHBORHOOD DRUG DEALING

Defendant argues that the trial court abused its discretion by excluding evidence of drug activities in his neighborhood. The trial court sustained the prosecutor's objection to Andre Purnell's testimony about drug-related problems in the neighborhood, and the court also excluded evidence of a 911 call that defendant made about a drug-related matter two days before the shooting. The trial court determined that this evidence was not relevant.

"Generally, all relevant evidence is admissible at trial," and "[e]vidence which is not relevant is not admissible." *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013) (citation and internal quotations omitted); MRE 402. "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Powell*, 303 Mich App at 277, quoting MRE 401.

Defendant argues that evidence of drug-related activities in his neighborhood was relevant to explain why he possessed a firearm, and to support the defense claim that Nelson was being attacked by others and that he shot her accidentally while trying to protect her from the attackers. However, there was no evidence suggesting that the shooting was related to any drug activity, or that either defendant or Nelson had ever been threatened by, harassed, or were involved with any drug dealers. Without any such evidence, the mere existence of drug trafficking in the neighborhood did not have any tendency to explain defendant's possession of a gun on the night of the offense, and did not make defendant's kidnapping explanation more probable. The trial court did not abuse its discretion by excluding this evidence.

## B. OPINION TESTIMONY BY POLICE OFFICERS

Defendant argues that three police officers were erroneously permitted to offer their opinion of defendant's guilt.

"A witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). Rather, the issue of an accused's guilt or innocence is a question for the jury. *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). It is also "improper for a witness . . . to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013). However, MRE 701 permits a lay witness to state "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." This rule

permits police officers to testify about their opinions and inferences based on their observations and rational perceptions as police officers where the opinions are not dependent upon scientific, technical, or specialized knowledge. *People v Oliver*, 170 Mich App 38, 49-50; 427 NW2d 898 (1988).

The challenged testimony did not involve any improper opinion of defendant's guilt, and it was within the parameters of MRE 701. None of the officers offered an opinion that he or she believed defendant was guilty. Their testimony pertained to discreet matters that, although probative of defendant's guilt, did not involve an opinion regarding the ultimate issue of defendant's guilt.

Officer Herfert had the opportunity to observe defendant during the hospital visit. Her opinion testimony that defendant appeared to be "acting" was rationally based on her personal observations of defendant's demeanor during his explanation of the shooting. Officer Petrich testified regarding his observations of the crime scene, and he explained how his observations were consistent with premeditation. He observed multiple spent casings both inside and outside the house, which indicated to him that the shooter took overt action necessary to chamber each round of ammunition that was fired. The presence of shotgun damage both inside and outside the house also indicated that shots were fired over a period of time necessary to move from inside the house to the driveway. Sergeant Bradford similarly testified regarding the aspects of the crime scene that he observed, which he opined were consistent with planning. With each witness, the challenged testimony involved rational inferences based on the witness's observations, and did not reach the ultimate issue of defendant's guilt. Thus, the trial court did not abuse its discretion in allowing the testimony.

## C. THE VICTIM'S HEARSAY STATEMENTS

Defendant next argues that the trial court erred in allowing Barbara Arline to testify regarding Nelson's hearsay statements made to her two days before Nelson's death. Arline testified that Nelson told her that defendant had been "acting up," by calling her names and by picking up a gun while arguing with her.

Generally, hearsay is not admissible unless it comes within one of the hearsay exceptions provided in the Michigan Rules of Evidence. MRE 801; *Musser*, 494 Mich at 350. The trial court agreed that Nelson's statements were hearsay, MRE 801(c), but found that they were admissible under the state-of-mind exception, MRE 803(3), which provides:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In this case, Nelson's statements to Arline were not admissible under MRE 803(3). Here, the statements did not describe Nelson's plans or intentions, but rather related to past events and were statements of "memory or belief to prove the fact remembered or believed." See e.g. *People v Moorer*, 262 Mich App 64, 73; 683 NW2d 736 (2004) (statements showing past events

to prove "the fact remembered or believed" are inadmissible under MRE 803(3)).  Accordingly, the trial court erred in determining that the statements were admissible under MRE 803(3).  Nevertheless, admission of the statement was harmless error where there was overwhelming evidence of defendant's guilt, including eyewitness testimony.  See *Moorer*, 262 Mich App at 74 ("Evidentiary error does not merit reversal unless it involves a substantial right, and after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative.")

## D.  DEFENDANT'S "SLEEP TALK"

Defendant's fourth evidentiary issue concerns "sleep talk" testimony provided by Travis Bowles.  Bowles testified that he and defendant were housed in the same jail facility and were among a group of inmates who were chained together.  Bowles testified that the two of them were "sleep deprived" for almost two weeks, during which defendant "stayed up like all the time" and would make statements about shooting his girlfriend and that "she had it coming."  Bowles described the statements as "sleep talking mantra type weird stuff."

Defendant did not object to this testimony at trial, our review of this issue is limited to plain error affecting defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  An error affects substantial rights when it affects the outcome.  *Id.*

Initially, because the "sleep talk" statements were not compelled or made during a custodial interrogation, we find no merit to defendant's argument that admission of the statements violated his Fifth Amendment right against self-incrimination.  *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014).  Moreover, defendant has not demonstrated that the testimony in this case qualifies as plain error.  Defendant's statements were admissible as an admission of a party opponent under MRE 801(d)(2).  To the extent defendant argues that the statements were inadmissible because he was asleep and unconsciously talking, considering Bowles' equivocation whether defendant's statements were made when he was only sleep deprived as opposed to actually sleeping, even assuming that "sleep talk" is not admissible, defendant cannot show that his statements qualify as "sleep talk."  For the same reason, defendant cannot show that defense counsel was ineffective for failing to object to Bowles' testimony.  See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.")

## III.  PROSECUTORIAL MISCONDUCT

Defendant next argues that he was denied a fair trial by the prosecutor's improper statements during jury voir dire and in closing argument.

We review claims of prosecutorial misconduct on a case-by-case basis, and evaluate the prosecutor's remarks in context.  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).  The test for prosecutorial misconduct is whether the defendant was denied a fair trial.  *Dobek*, 274 Mich App at 63.

At the start of voir dire, the prosecutor stated:

We hear a lot about the fact that the prosecution has the obligation of proving all the elements of the offense beyond a reasonable doubt. And that the defendant is presumed innocent unless all the elements are proven. Does anybody though think that *my clients, the People of Michigan*, are not entitled to a fair trial? Does anybody think it's a one way street? Ms. Peraino, should it be a two way street? Are we entitled—*my clients* entitled to a fair trial? [Emphasis added.]

The prosecutor continued,

You can expect in this case that I will be as aggressive as I can be to obtain the result that I think that *my clients, the People of Michigan* are entitled to. And that means that you're going to hear me object and make certain arguments. And sometimes it gets very heated, okay. . . . Is anybody going to punish *my clients, the People of Michigan*, because *they* happen to *have* an aggressive lawyer on this case? [Emphasis added.]

The prosecutor asked Juror K if his previous experience with the police "would prevent you from giving my clients a fair shake in the jury room after you've heard all the evidence?" The prosecutor asked Juror S:

I'm hired by the Attorney General to represent the People of Michigan, they're my clients. Do you think that that entitles me to any benefit or my clients to any benefit.

The prospective juror replied, "No."

Juror A admitted that he "had a little streak of getting into trouble" with the legal system, but he did not have a bad opinion of the police or prosecutors because he "got what [he] deserved." The prosecutor then asked, "Think my clients the People of Michigan are entitled to a fair trial?" The prospective juror replied that they were.

In another instance, the following exchange occurred:

*Q.* [PROSECUTOR]: [M]y clients the people of Michigan, which we are all the people, are they entitled to a fair trial?

*A.* [JUROR Y]: Yes.

*Q.* My clients entitled to a fair trial?

*A.* Oh definitely, yes.

*Q.* Cause there's no King here; I don't represent any King.

At the conclusion of voir dire, the trial court held a bench conference. Defense counsel stated:

To Mr. Whitesman and his questions had referred to the People of the State of Michigan and then we are all people . . . . And I don't think that was proper to bring the jury in as a prospective plaintiff in the case. That has the effect of doing that.

The prosecutor replied:

I think that the reality is that I represent the people of Michigan and that's how it's framed. I made it clear that I'm hired by the government to represent the people. And that's the reality of who I represent.

The trial court stated:

You know, it's not the kind of objection I'm going to correct, but, you know, I think [defense counsel's] correct. He's right in that *what you've done is you've told the jury that you represent them.* And in a generic sense, yes you do, but in the sense of this trial, no you don't. [Emphasis added.]

Despite the trial court's admonishment, during closing argument, the prosecutor continued with his theme, stating, "On behalf of my clients, the People of Michigan, who are very real people, I want to thank you for your attention." He ended with the statement, "On behalf of my clients, the very real people who seek justice, we're requesting that you return a verdict of guilty as to all three."

The prosecutor's repeated assertions that the "people of Michigan" were his clients amounted to misconduct. Although an introductory statement that includes the phrase "I represent the people of Michigan," is acceptable, here, the prosecutor repeatedly told the prospective jurors, and then the jury, that the people of Michigan were his clients, on no less than 11 separate occasions. The prosecutor stated that he was "hired by the Attorney General to represent the People of Michigan," that he did not represent "any King," but rather resented "the people of Michigan," that "we are all people," and that his "clients" were "very real people who seek justice." In constantly repeating this theme, the prosecutor risked leading the jurors to believe that he represented them. It is well-established that prosecutors may not inject issues into a trial that are broader than a defendant's guilt or innocence. *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003). Thus, prosecutors may not appeal to the jurors' sense of civic duty, *id.*, or attempt to persuade jurors based on the prestige of the office. *People v Cowell*, 44 Mich App 623, 628; 205 NW2d 600 (1973). The prosecutor came close to injecting issues into the trial that were broader than defendant's guilt or innocence, played on the prestige of his office, and bordered on an appeal to the juror's sense of civic duty. The trial court clearly explained to the prosecutor the nature of his error and in so doing implicitly cautioned him from using the verbiage. Despite the trial court's statement, the prosecutor continued using the same verbiage. This was improper.

Although the prosecutor intentionally committed misconduct in this case, contrary to defendant's argument, the misconduct did not amount to a structural error warranting reversal. That is, the error did not rise to the level of the very limited class of errors that constitute structural errors that "affect the framework of the trial, infect the truth-gathering process, and

-6-

deprive the trial of constitutional protections without which the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *People v Allan*, 299 Mich App 205, 211-212; 829 NW2d 319 (2013) (citation omitted). Rather, instances of misconduct must be reviewed on a case-by-case basis to determine whether, when viewed in context of the entire proceeding, the misconduct denied defendant a fair trial. *Dobek*, 274 Mich App at 63.

In this case, the improper statements did not deny defendant a fair trial. The prosecutor did not offer the references as a reason for finding defendant guilty and there was overwhelming evidence of defendant's guilt. In addition, the trial court instructed the jury that it was to "decide the case based upon the facts and the evidence and the law given to you by the Court and not your sympathies or prejudices," and that the lawyers' statements and comments are not evidence. See *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008) (Jurors are presumed to follow the trial court's instructions).

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a Standard 4 brief. This brief is written in a rambling style and is largely incoherent. See *People v Kelly*, 231 Mich App 627, 640–641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.") The brief reiterates claims of evidentiary error and ineffective assistance of counsel that have already been addressed. Defendant raises an additional issue suggesting that the prosecutor fabricated evidence that defendant gave a written confession in the course of a "mass" police investigation. This argument is difficult to comprehend and we have not found anything in our review of the lower court record to corroborate any portion of that argument. The prosecutor did not introduce a written confession into evidence, and no prosecution witness represented that defendant wrote out or signed a confession. There was testimony that an officer typed defendant's oral responses in the hospital interview, but this writing was not offered as an exhibit. To the extent that defendant raises additional claims of ineffective assistance of counsel, he has not established any errors apparent from the record or demonstrated any basis for remanding this case for an evidentiary hearing. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013); *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Michael F. Gadola