# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JESSIE VORNELL LEWIS,

        Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 324267
Wayne Circuit Court
LC No. 14-004400-FC

Before: O'CONNELL, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of second-degree murder, MCL 750.317, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a third habitual offender, MCL 769.11, to 40 to 70 years' imprisonment for the second-degree murder conviction, 20 to 35 years' imprisonment for the armed robbery conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

Defendant asserts that insufficient evidence was adduced at trial to sustain his convictions. Specifically, defendant challenges the absence of any evidence to suggest that he was the shooter or that he possessed a weapon. He further contends that he was able to provide a reasonable, alternative explanation for the cellular telephone and text messages submitted at trial.

As discussed in *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010):

> This Court reviews de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution, to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. Further, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses. "[C]onflicts in the evidence must be resolved in favor of the prosecution." Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime. [Citations omitted.]

This Court "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

-1-

The elements comprising second-degree murder are: "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation and quotation marks omitted). The elements of armed robbery include:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7-8; 742 NW2d 610 (2007).]

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011) (citation and quotation marks omitted).

Defendant initially challenges the absence of any eyewitness testimony or other evidence suggesting his possession of a firearm or weapon at the scene of the crime. Defendant acknowledged that he was present at the crime scene when certain events transpired. Defendant's aunt, Norma Lyte, observed defendant at the scene immediately before hearing gunshots and the car crash and saw someone wearing the same clothing as defendant running from the scene. Norma indicated a high degree of certainty that the person running from the scene was defendant. Defendant's cellular telephone was recovered from the crime scene, near the victim's body. A search of defendant's residence resulted in the retrieval of the type of ammunition consistent with that used in shooting the victim and a cellular telephone box matching the telephone belonging to defendant and found at the crime scene. The actual weapon used was never recovered. An analysis of defendant's cellular telephone and records obtained from the carrier, place defendant at the crime scene at the relevant times and serve to substantiate his activities throughout the day leading up to the murder. Telephone calls and text messages were exchanged between defendant and his codefendant, Jarvis Glenn, who was known to have been with the victim during the day, suggesting the victim, Glenn and defendant were in the same general area before the shooting occurred. The content of the text messages exchanged between defendant and Glenn imply a plan to take the victim's cellular telephones and an element of planning. The cause of the victim's death was attributable to two gunshot wounds. While witnesses did not observe defendant with a gun at the scene, photographs of defendant on his cellular telephone demonstrate he had access to weapons.

"Circumstantial evidence and the reasonable inferences it permits are sufficient to support a conviction, provided the prosecution meets its constitutionally based burden of proof beyond a reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Further, it is well established that evidence of flight will support an inference of a defendant's consciousness of guilt. *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001). The term "flight" has been applied to actions such as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape from custody. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). "[I]t is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt." *People v Unger*, 278 Mich App 210, 221; 749 NW2d 272 (2008).

Ample evidence was adduced at trial that placed defendant at the scene and then fleeing the area immediately after the vehicular crash and gunshots. Defendant's cellular telephone was recovered close to the victim's body, and an analysis of the cellular telephone and the carrier records associated with it confirm defendant's presence in the area and his communications with Glenn, who had been with the victim, immediately before the shooting and indicating a plan or communications pertaining to a theft involving the victim. Evidence of where the victim's wounds were incurred further suggests that the victim was shot by someone outside of the victim's vehicle. It was undisputed that the victim was a drug dealer. Witnesses testified that the victim had indicated problems with his business in the 24-hour period preceding his death and that defendant worked for the victim. Taking this evidence in the light most favorable to the prosecution, we conclude that sufficient evidence was adduced to sustain defendant's convictions.

Defendant also argues that there was no proof of an armed robbery because the victim's cellular telephones, which the prosecution contended were what the defendant intended to steal, were not removed from the victim or his vehicle. Contrary to defendant's argument, "a completed larceny is no longer necessary to sustain a conviction for the crime of robbery or armed robbery." *People v Williams*, 491 Mich 164, 166; 814 NW2d 270 (2012).

Defendant further asserts that he provided a reasonable, alternative explanation for his presence in the area and his text messages with Glenn. This Court is not permitted to interfere with the role of the trier of fact in determining the weight of the evidence or the credibility of witnesses. *Hardiman*, 466 Mich at 428; *Kanaan*, 278 Mich App at 619. Further, inconsistent witness testimony does not render the evidence insufficient because such issues were for the jury to resolve in determining the credibility of the witnesses. *People v Smith*, 205 Mich App 69, 72 n 1; 517 NW2d 255 (1994). Based on the requirements that this Court "draw all reasonable inferences and make credibility choices in support of the jury verdict," *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), defendant's challenges to the sufficiency of the evidence premised on the credibility of witnesses are without merit.

For the same reasons asserted regarding his claim of insufficient evidence, defendant argues that the verdict was contrary to the great weight of the evidence. "An appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates

so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). In this case, defendant failed to preserve this issue because he did not raise it in a motion for a new trial. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). Consequently, our review is for plain error affecting defendant's substantial rights. *Id*.

As discussed when addressing defendant's claim regarding the sufficiency of the evidence, defendant acknowledged being in the area of the shooting at the time it occurred. His aunt, Norma, testified to seeing defendant before hearing the shots and the vehicular crash and observing defendant running from the scene after the accident and gunshots occurred. Defendant's cellular telephone was recovered in close physical proximity to the victim. It was undisputed that the victim was involved in the illegal drug trade and that he had expressed having problems with his business shortly before his death. One witness identified defendant as a confederate of the victim in the drug trade. Text messages and cellular telephone calls were documented earlier in the day and immediately before the homicide between defendant and Glenn suggesting the planning of a theft from the victim, with Glenn's being in the company of the victim on the day of the shooting. Live ammunition, similar in type to that used to kill the victim, was found at defendant's residence. The evidence did not "preponderate[] so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Musser*, 259 Mich App at 218-219; See also *Cameron*, 291 Mich App at 617.

Defendant also asserts his trial counsel was ineffective for failing: (a) to comply with defendant's requests or to return documents to defendant or his appellate counsel, (b) to seek a separate trial or jury from his codefendant, Glenn, (c) to object to rebuttal testimony provided by a relative of the victim, and (d) to object to the scoring of OVs 5, 13 and 14.

Defendant failed to preserve his claim of ineffective assistance of counsel by failing to raise the issue in a motion for a new trial or a motion for a *Ginther*[1] hearing in the trial court. *Musser*, 259 Mich App at 220-221. Therefore our review is limited to the existing record. *Id*. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In general, a trial court's findings of fact are reviewed for clear error, with questions of constitutional law reviewed de novo. *Id*.

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To demonstrate ineffective assistance of counsel, a defendant is required to demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Accordingly:

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defense counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did. [*People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (citations and quotation marks omitted).]

"Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

First, defendant contends that trial counsel was ineffective for not seeking an evidentiary hearing or pursuing certain lines of questioning that he had requested. Notably, defendant fails to provide any detail regarding these alleged omissions by his trial counsel or to elucidate their relevance. Defendant's failure to provide any authority or to identify evidence from the record to support his claim constitutes an abandonment of this aspect of the issue on appeal. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (an appellant cannot simply announce his position and leave it for this Court to discover and rationalize the basis for his claims).

Similarly, the failure of trial counsel to turn over his file to appellate counsel does not serve to demonstrate that counsel was ineffective at trial. Defendant's claim is conspicuously deficient of any details regarding the line of questioning he wished counsel to pursue or the types of motions or documents he wished his attorney to file with the trial court. To prevail on an ineffective assistance of counsel claim, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel's decisions as to whether to call or question witnesses and what evidence to present are presumed to be matters of trial strategy, which this Court will not second-guess with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

Defendant next asserts trial counsel was ineffective for failing to obtain a separate trial or jury from his codefendant, contending their defenses were antagonistic. As discussed in *People v Bosca*, 310 Mich App 1, 44; 871 NW2d 307 (2015) (citations and quotation marks omitted):

There is no absolute right to separate trials, and in fact, a strong policy favors joint trials in the interest of justice, judicial economy, and administration. Severance should be granted when defenses are antagonistic. A defense is deemed antagonistic when it appears that a codefendant may testify to exculpate himself and to incriminate the defendant. Further, defenses must be not only inconsistent, but also mutually exclusive or irreconcilable. In other words, the tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other. Incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice.

It is difficult to comprehend defendant's contention that the defense Glenn asserted was antagonistic, particularly given the absence of any testimony by Glenn or witnesses called on his

behalf. The evidence demonstrates that defendant and Glenn were in the same general area at the time of the relevant events. Evidence also established that Glenn was with the victim earlier in the day and that Glenn and defendant exchanged cellular telephone calls and text messages near the time of the events. Both defendant and Glenn asserted they were not perpetrators of the crime and did not accuse each other. Hence, the defenses were not antagonistic or irreconcilable necessitating severance of trials or a separate jury.

Defendant also argues that the inability of the jury to reach a verdict with regard to certain charges against Glenn proves that separate juries or trials were necessary. Defendant suggests that the guilty verdicts the jury rendered on his charges serves as a means for the jury to "rationalize" their inability to render a verdict on the same charges with regard to Glenn. Defendant asserts that a separate jury or trial would have forced the jury to focus on the lack of evidence against defendant instead of obfuscating the issue of guilt caused by Glenn's finger-pointing. But contrary to defendant's theory, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *People v Hana*, 447 Mich 325, 350; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994), quoting *Zafiro v United States*, 506 US 534, 540; 113 S Ct 933; 122 L Ed 2d 317 (1993). Further, the trial court allayed any risk of prejudice by instructing the jury to consider each defendant separately. See *Hana*, 447 Mich at 351. Because defendant and Glenn did not present mutually exclusive defenses, the use of a joint trial and jury was not prejudicial, and the jury's ability to assess the guilt or innocence of each defendant separately was not hindered.

Defendant next contends trial counsel was ineffective for failing to object to the brief testimony elicited from the victim's brother, Tyrone Thomas, identifying defendant as working for the victim. According to defendant, trial counsel was ineffective for failing to verify that Tyrone was not present in the courtroom during the trial in accordance with a sequestration order before being permitted to testify. First, there is no proof to support defendant's claim. Defense counsel was clearly present throughout trial and had the opportunity to observe who was present in the courtroom on a daily basis. Notably, defendant does not assert that Tyrone was present in the courtroom during the elicitation of other evidence or testimony; he merely asserts defense counsel failed to ascertain or verify whether he had been present. It is equally likely that given the existence of a sequestration order, Tyrone was not in the courtroom other than while testifying. Second, defendant contends that Tyrone's testimony was unnecessary. Tyrone was presented as a rebuttal witness to address defendant's testimony that he did not know the victim and was not involved in the victim's illegal drug transactions. Tyrone's testimony was limited solely to addressing defendant's credibility regarding his lack of familiarity with the victim. "Rebuttal evidence is limited to refuting, contradicting, or explaining evidence presented by the opposing party." *People v Humphreys*, 221 Mich App 443, 446; 561 NW2d 868 (1997). In this case, Tyrone's testimony was properly admitted because it was responsive to evidence introduced by defendant. *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996).

Finally, defendant contends trial counsel was ineffective for failing to object to the trial court's scoring of OVs 5, 13 and 14.

At sentencing, defendant was assessed 15 points for OV 5. OV 5 pertains to psychological injury to a victim's family, with 15 points assessed "if the serious psychological injury to the victim's family may require professional treatment." MCL 777.35(2). At

sentencing a relative of the victim did testify that family members needed psychological assistance to cope with the victim's death. Notably, at the time of defendant's sentencing our Supreme Court had not issued its decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). Defense counsel cannot be required to be prescient or knowledgeable regarding rulings not yet made. See *Ericksen*, 288 Mich App at 201. In addition, even under *Lockridge*, it is arguably not ineffective assistance for counsel to fail to object to the scoring of a variable using judicial fact-finding. "[J]udicial fact-finding remains an important component of Michigan's sentencing scheme post-*Lockridge*." *People v Jackson (On Reconsideration)*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 322350); slip op at 11. "Although the sentencing guidelines are no longer mandatory, 'they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id.*, quoting *Lockridge*, 498 Mich at 391. The *Lockridge* Court, emphasized that "[o]ur holding today does nothing to undercut the requirement that the highest number of points possible *must* be assessed for all OVs, whether using judge-found facts or not." *Id.* at 392 n 28.

"Under MCL 777.43, the trial court must score points under OV 13 on the basis of a defendant's felonious acts that constitute a continuing pattern of criminal behavior. If the sentencing offense was part of a pattern of felonious criminal activity involving three or more crimes against a person, the trial court must score OV 13 at 25 points." *People v Bemer*, 286 Mich App 26, 33; 777 NW2d 464 (2009). "When determining the appropriate points under this variable, 'all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.' " *Id.*, citing MCL 777.43(2)(a). With regard to the scoring of OV 13, defendant had a prior armed robbery conviction in 2010 in addition to his current convictions for second-degree murder and armed robbery. A pattern of criminal activity can be premised on multiple offenses arising from the same event or occurrence. *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). As such, the factual basis for the scoring of this variable comprised information admitted by defendant or found by the jury premised on the guilty verdict of two of the charged offenses and defendant's acknowledgment of his prior conviction. See *Jackson*, ___ Mich App at ___; slip op at 13 ("The United States Supreme Court has recognized that a defendant's admission of a prior conviction satisfies the requirement that a sentencing enhancement be based on facts admitted by a defendant or found by a jury."). Therefore, the scoring of OV 13 was supported by facts admitted by defendant and were properly considered in defendant's total OV score. *Id*.

In accordance with MCL 777.44(1)(a), 10 points are assessed for OV 14 when the "offender was a leader in a multiple offender situation." Defense counsel did not object to scoring of this variable, and the trial court concurred with the prosecutor that the jury's determination of defendant's guilt as the shooter on the charge of second-degree murder without a conviction of Glenn on this charge demonstrated defendant's leadership role. "A 'leader' is defined, in relevant part, as 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group.' To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing or conducting." *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014), citing *Random House Webster's College Dictionary* (2001). Defense counsel did not contest the scoring of OV 14, and the trial court elected to assess 10 points for this variable. Based on the cellular telephone records and text messages, evidence was adduced demonstrating that defendant and Glenn were acting together against the victim. Arguably, although the jury determined defendant to be the more aggressive perpetrator by finding him to be the shooter

based on his convictions and the failure to attain a similar determination of guilt regarding Glenn on the murder and felony-firearm charges, it remains a leap in logic to assume that the jury, therefore, determined defendant to be the leader in this criminal enterprise. Rather, based on the text messages sent from Glenn to defendant and Glenn's earlier physical proximity throughout the day to the victim, it is equally probable that Glenn was directing the events leading to the victim's death. "Under the dictionary definition of leadership, we cannot conclude that merely posing a greater threat to a joint victim is sufficient to establish an individual as a leader within the meaning of OV 14, at least in the absence of any evidence showing that the individual played some role in guiding or initiating the transaction itself." *Rhodes*, 305 Mich App at 90. Although the assessment of 10 points for this variable was error, it was harmless as the correction of the scoring of this variable does not alter defendant's guideline range. "If a scoring error does not alter the guidelines range, resentencing is not required." *Id.* at 91 (citation omitted).

Finally, defendant contends, for the same reasons alleged in conjunction with his claim of ineffective assistance of counsel that the trial court improperly scored OVs 5, 13 and 14 based on judicial-based fact-finding and not premised on findings by the jury or admitted by defendant.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the facts as found by the court are sufficient to meet the scoring conditions prescribed by statute constitutes a legal question that is reviewed de novo. *Id*. "A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo." *Lockridge*, 498 Mich at 373.

With regard to OV 5, defendant is correct in asserting that the assessment of 15 points for this variable was premised on judicial fact-finding following testimony by a member of the victim's family at sentencing. Scoring of this variable should have remained at zero points.

Contrary to defendant's contention, however, OV 13 was correctly scored at 25 points premised on a pattern of criminal behavior over the most recent five-year period. The jury convicted defendant of second-degree murder and armed robbery, both constituting crimes against a person. See *Bemer*, 286 Mich App at 33; MCL 777.43(2)(a). Their concurrent nature as arising from the same transaction does not preclude the score assessed. *Harmon*, 248 Mich App at 532. Defendant asserts that the inclusion of his prior armed robbery conviction in 2010 was the result of judicial fact-finding, ignoring that during trial, defendant personally acknowledged this conviction and his guilt. As such, the assessment of 25 points for this variable did not comprise error as it was premised on both the jury's determinations of defendant's guilt and defendant's own acknowledgement.

Defendant also argues that the assessment of points on OV 14 was in error and premised on judicial fact-finding based on the lack of evidence or determination by the jury that defendant assumed a leadership role in the events that transpired. We concur that, in accordance with *Rhodes*, 305 Mich App at 90, the assessment of 10 points on this variable comprised error.

Using the points assessed by the trial court, defendant's sentencing guidelines range fell within the range of 315 to 525 months on the applicable grid. Defendant's total prior record variable (PRV) score was 54 points, placing him at PRV Level E. This remains unchanged.

Defendant's OV score was 130, placing defendant at OV level III. The elimination of 15 points for OV 5 and 10 points for OV 14 results in a total OV score for defendant of 105. This reduction does not affect his applicable sentencing guideline range, which remains at OV level III, 315 months to 525 months. Because the "facts admitted by the defendant and [] facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced . . . defendant suffered no prejudice from any error, [and] there is no plain error and no further inquiry is required." *Lockridge*, 498 Mich at 394-395.

Finally, we find without merit the arguments defendant presents in his Standard 4 brief.

First, defendant argues that he was denied a fair trial by the admission of firearms evidence and a photograph of defendant holding a handgun. Defendant contends this evidence was both irrelevant and prejudicial. We note, of course, this argument is contradictory as "all evidence is somewhat prejudicial to a defendant—it must be so to be relevant." *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002). It is only when the probative value relevant evidence is substantially outweighed by the danger of unfair prejudice that it may be excluded. MRE 403; *People v Herndon*, 246 Mich App 371, 414, n 92; 633 NW2d 376 (2001). As discussed already, the evidence defendant complains of was relevant. Moreover, even if the photograph of defendant should have been excluded under MRE 403, its admission into evidence does not warrant reversal because on examination of all other properly admitted evidence, it does not affirmatively appear that it is more probable than not that the alleged error was outcome determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

Next, defendant contends the prosecutor committed misconduct by making certain comments during his rebuttal argument that were based on evidence admitted at trial and responsive to defense counsel's arguments. These remarks were not improper when evaluated in context and in light of each party's theory of the case, the opponent's arguments, and the evidence. See *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

Defendant also asserts that in the same very brief rebuttal argument, the prosecutor improperly vouched for the credibility of two witnesses by stating he believed they told the truth. To preserve a claim of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction. *Bennett*, 290 Mich App at 475. Because these alleged errors are unpreserved, our review is limited to ascertaining whether plain error affected substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Under this standard of review, reversal is warranted only when a plain error results in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *Unger*, 278 Mich App at 235. The prosecutor's brief comments concerning credibility, even if plain error, do not warrant relief under this standard. Moreover, the trial court immediately after the prosecutor completed his rebuttal argument, began its final instructions to the jury. These instructions included that the jury must decide the case only on the evidence properly admitted during the trial, that it was the function of the jury to determine the credibility of witnesses and, that the lawyers' comments were not evidence. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Id*. (citations omitted).

Next, defendant claims that the trial court erred in its instruction to the jury pertaining to the jury's consideration of identification testimony. Defense counsel affirmatively approved the trial court's instructions to the jury; consequently, defendant has waived this alleged error. *Bosca*, 310 Mich App at 46. Moreover, even if not waived, the trial court's instructions read as a whole, *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011), included all elements of the charged offenses, defenses, and theories of the parties that were supported by the evidence. See *Jackson*, ___ Mich App ___, slip op at 11. Thus, no plain error occurred with respect to this jury instruction. See *People v Snider*, 239 Mich App 393, 420; 608 NW2d 502 (2000).

Defendant also asserts structural error occurred because the jury was sworn contrary to the exact wording of MCR 2.511(H)(1).[2] After the petit jury was impaneled, the clerk of the court administered the following oath to the jury: "Do you solemnly swear or affirm to honestly and truthfully try this case and to deliver your decision according to the laws and evidence of this state?" The jury responded affirmatively in unison. Because defendant did not raise this issue before the trial court, our review is for plain error affecting defendant's substantial rights. *People v Allan*, 299 Mich App 205, 210; 829 NW2d 319 (2013), modified *People v Cain*, 498 Mich 108, 128; 869 NW2d 829 (2015).

In both *Allan*, 299 Mich App at 208, and *Cain*, 498 Mich at 113, the venire was sworn to answer truthfully regarding questions asked during the voir dire process; no further oath was administered to the petit jury after the selection process was complete. See MCR 6.412(B), and M Crim JI 1.4. The *Allan* Court found this total failure to administer an oath to the selected jury was plain error. *Allan*, 299 Mich App at 211. "To avoid forfeiture of a constitutional right under the plain-error rule, defendant must prove the following: (1) there was an error; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., the outcome of the lower-court proceedings." *Id*. at 210, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The *Allan* Court held that the plain error of not swearing the jury at all was a "structural" error that satisfied the third prong for granting relief from the plain error. *Id*. at 218. Without further analysis, the *Allan* Court also concluded that the plain error satisfied the fourth prong necessary to grant relief from plain forfeited error.[3] Specifically, the *Allan* Court "conclude[d] that the trial court's failure to administer the oath to the jury seriously affected the

---

[2] MCR 2.511(H)(1) provides: "The jury must be sworn by the clerk substantially as follows:

Each of you do solemnly swear (or affirm) that, in this action now before the court, you will justly decide the questions submitted to you, that, unless you are discharged by the court from further deliberation, you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the court, so help you God."

[3] Under the fourth prong for relief from plain error, an appellate court must exercise its discretion in deciding whether to reverse. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (citation, quotation marks, and brackets omitted).

fairness, integrity, and public reputation of the judicial proceedings." *Id*. Thus, *Allan* held that the total failure to administer an oath to the petit jury warranted relief. *Id*. at 219.

In the factually similar *Cain* case, our Supreme Court noted that the parties agreed that administering only the oath to the jury that precedes voir dire was an error that satisfied the first two prongs of the plain-error rule: (1) there was an error, and (2) the error was plain, clear or obvious. *Cain*, 498 Mich at 113, 117. The Court did not address whether the plain error affected the defendant's substantial rights because it concluded that even if it did, the Court was "not persuaded that the trial court's failure to properly swear the jury seriously affected the fairness, integrity, or public reputation of the judicial proceedings in this case and [the] defendant does not even argue that he is actually innocent." *Id*. at 118-119. The Court also left unresolved whether the error was merely a trial error of failing to comply with MCR 2.511(H)(1) or whether it was "a structural constitutional error," because being an unpreserved error, the "defendant must satisfy the plain-error standard of *Carines* in either event." *Cain*, 498 Mich at 117 n 4. Nevertheless, the Court criticized the idea that "the structural nature of the error presumptively establishes the fourth prong" of *Carines* because such presumption was inconsistent with the Court's holding in *Vaughn*, 491 Mich at 654, 667. *Cain*, 498 Mich at 117 n 4(e) (quotation marks omitted).

The application of the fourth prong of the *Carines* plain-error test requires a court to engage in a "case-specific and fact-intensive" analysis. *Id*. at 121. The Court in examining the facts and circumstances of the case before it determined that purposes of administering an oath to the jury were "alternatively fulfilled in large part by the trial court's instructions prescribing the particulars of the jurors' duties." *Id*. 122. The trial court's instructions plus the jury's having twice been sworn to give truthful answers concerning their qualifications led the *Cain* Court to conclude that the jury understood "the dignity and solemnity of the proceedings." *Id*. at 123-124. The Court also observed that the trial judge was "vigilant in attempting to ensure that the jury remained fair and impartial throughout the proceedings." *Id*. at 125. The Court criticized *Allan* because it did not include a "fact-intensive and case-specific inquiry under the fourth *Carines* prong to assess whether, in light of any 'countervailing factors' on the record, leaving the error unremedied would constitute a miscarriage of justice, i.e., whether the fairness, integrity, or public reputation of the proceedings was seriously affected." *Cain*, 498 Mich at 128.

The present case is distinguished from both *Allan* and *Cain* because after being selected, the petit jury was administered an oath, albeit one not in the exact words of MCR 2.511(H)(1): the clerk transposed the words "laws" and "evidence." But MCR 2.511(H)(1) by its plain terms requires only substantial compliance with its suggested text. See *Cain*, 498 Mich at 124 n 6. Consequently, it is not apparent that an error occurred in this case that was "plain, i.e., clear or obvious." *Carines*, 460 Mich at 763. Even assuming that plain error occurred, the facts and circumstances of this case establish more strongly than those of *Cain* that the imperfect oath administered to the jury "did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Cain*, 498 Mich at 128. The oath that was administered to the jury together with the trial court's instructions to the jury concerning the law and the jurors' duties ensured that defendant received a fair and impartial trial. Thus, leaving the alleged error uncorrected will not result in a miscarriage of justice. *Id*. While defendant maintains his innocence, the evidence presented to the jury supports its conclusion to the contrary, as discussed

already.  Defendant is not entitled to relief on the basis of the alleged imperfect jury oath administered in this case.  *Id*. at 121-128.

Last, defendant argues that the trial court abused its discretion by admitting certain tracking dog evidence.  While defendant cites preliminary discussion between the trial court and counsel before the jury was selected concerning such evidence, he does not point to where in the record it was actually admitted or explain how the alleged error was outcome determinative.  See *Lukity*, 460 Mich at 495-496.  This issue is abandoned.  *Watson*, 245 Mich App at 587.

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Colleen A. O'Brien