*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JIMMIE WALKER, JR.,

       Defendant-Appellant.

UNPUBLISHED
August 20, 2019

No. 340719
Oakland Circuit Court
LC No. 2017-262242-FC

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of armed robbery, MCL 750.529, one count of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, arising from his robbery of a jewelry store.[1] The trial court sentenced defendant as a fourth-offense habitual offender under MCL 769.12, to 40 to 60 years each for his armed robbery convictions, 40 to 60 years for his AWIGBH conviction, 10 to 40 years for his felon-in-possession conviction, and two years each for his felony-firearm convictions. We affirm.

## I. BACKGROUND

Daniel Chiappelli owns the Clarkston Jewelry Outlet (the store) in Clarkston, Michigan. On December 17, 2016, at about 4:00 p.m., while working at the store with his son, Hunter Chiappelli (Hunter), defendant and Roy Genright entered Chiappelli's store with handguns drawn wearing ski masks and gloves. Chiappelli rushed to the back of the store to activate the silent panic alarm but could not do so because it needed a new battery. Genright chased after

---

[1] The jury acquitted defendant of one count of second-degree home invasion, MCL 750.110a(3), and one count of unlawfully driving away a motor vehicle, MCL 750.413.

Chiappelli and ordered him to the ground. Defendant followed with Hunter and ordered him to the ground. Genright held Chiappelli and Hunter at gunpoint on the ground while defendant robbed the showroom. After being pistol whipped, Chiappelli fought with Genright to take his gun. Genright called for defendant's help and he returned and shot at Chiappelli injuring him. Defendant threatened to kill him and Hunter if Chiappelli moved again. The robbers forced Chiappelli to open the large safe from which they stole loose diamonds, customer's jewelry, and other articles of value. Afterward, they moved Chiappelli and Hunter into the back room where Genright watched them while defendant stole additional items. Defendant left out the front door of the store with the jewelry and Genright fled through the back door.

Chiappelli realized that the robbers jumped the fence into nearby Lakeview Cemetery. After telling Hunter to call 911, Chiappelli drove his truck around the block to the only entrance to the cemetery. There he saw defendant and Genright trying to escape in a white Chevrolet Malibu. Chiappelli blocked the entrance of the cemetery with his truck which prompted Genright to exit the Malibu and start shooting at Chiappelli. Chiappelli drove his truck from the cemetery entrance but when the robbers tried to drive out of the cemetery he reversed and rammed his truck into the Malibu immobilizing it. The robbers escaped on foot. Genright and defendant were later arrested and convicted in separate trials.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first contends that the prosecution failed to prove defendant's identity as one of the robbers and that the prosecution only proved that his rental car served as the getaway car. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When determining whether the prosecution presented sufficient evidence to support a conviction, we review the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). In reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). "A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018) (citation omitted).

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Circumstantial evidence and reasonable inferences drawn from that evidence may suffice to prove the elements of a crime. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

In this case, the prosecution presented circumstantial evidence that defendant robbed the jewelry store. Police recovered the car rental agreement from the glove compartment of the Malibu which indicated that defendant rented the robbers' getaway car. The police also obtained defendant's DNA from a water bottle and an orange juice bottle recovered from inside the car. That evidence established that defendant had been inside the Malibu. Hunter identified one of the robbers as wearing both a camouflage ski mask and jeans with a "light pattern on the back pockets." The police recovered a camouflage ski mask with defendant's DNA near the crashed Malibu. Later on December 17, 2016, witnesses saw defendant wearing jeans with a pattern on the back pocket that matched the jeans of one of the robbers.

Police also found defendant's cell phone inside the Malibu. The phone number matched the number provided by defendant on the car rental application. Data retrieved from defendant's phone established that his phone traveled from Detroit to Clarkston on the afternoon of December 17, 2016. Phone account records indicated that defendant's phone interacted with a cell tower in Clarkston around the same time as the robbery. Further, defendant's phone data established that he called Genright about 30 times in the days leading up to the robbery, which showed that defendant had a personal connection with Genright who witnesses identified as one of the robbers. The police also recovered a gun registered to defendant that was used during the robbery.

Jurors could reasonably infer from all of this circumstantial evidence that defendant robbed the jewelry store. Therefore, defendant's claim that the prosecution presented insufficient evidence to identify him as a perpetrator of the jewelry store robbery fails.

## III. FOURTH-OFFENSE HABITUAL SENTENCE ENHANCEMENT

Next, defendant contends that the trial court erred by sentencing him as a fourth-offense habitual offender because two of his convictions for which he received sentences on the same day in 1992 arose out of the same transaction. We disagree.

We review for clear error a trial court's factual findings at sentencing. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). We review for an abuse of discretion a trial court's decision to impose an enhanced sentence under the habitual offender statute. *Id*. A trial court abuses its discretion if it "chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). A finding is clearly erroneous if this Court "is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

MCL 769.12 provides in relevant part:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

Defendant's Presentence Investigation Report (PSIR) reported that defendant had been convicted and sentenced for numerous felonies over the years, including receiving and concealing stolen property in 1984, larceny from a motor vehicle in 1986, larceny in a building in 1992, and receiving and concealing stolen property in 1992. For each of the 1992 crimes, defendant received sentences on September 29, 1992. The PSIR did not indicate the offense dates for either of defendant's 1992 convictions. Defendant contends that those convictions "appear to be part of the same transaction" because his sentences for both crimes were imposed on the same day. Defendant's argument lacks merit because it rests entirely on speculation.

Moreover, under MRE 201(b), courts may take notice of certain adjudicative facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Further, judicial notice of facts may be taken at any stage of the proceedings including at the appellate level. MRE 201(e); *Hetrick v Friedman*, 237 Mich App 264, 269; 602 NW2d 603 (1999), disagreed with on other grounds *Wold Architects and Eng v Strat*, 474 Mich 223; 713 NW2d 750 (2006). Michigan's Offender Tracking Information System (OTIS) reports the specific offense dates for defendant's two 1992 felony convictions. OTIS indicates that defendant committed the crime of larceny in a building on January 30, 1992, and later he committed the crime of receiving and concealing stolen property more than $100 on March 28, 1992. Therefore, defendant's 1992 convictions did not arise out of the same transaction. Consequently, defendant fails to establish that the trial court clearly erred in relying on those two convictions among his other felony convictions to determine his habitual offender status.

Regarding the fourth-offense habitual offender sentence enhancement, defendant also contends that the trial court violated his constitutional right to equal protection because the receiving and concealing stolen property greater than $100 is no longer a felony in Michigan. We disagree.

Before 1999 the crime of receiving or concealing stolen property greater than $100 was classified as a felony. See *People v Mamon*, 190 Mich App 124, 125; 475 NW2d 378 (1991) (stating that the defendant pleaded guilty to two counts of receiving and concealing stolen property over $100 and was sentenced to two to five years each for those felony convictions). In 1998, the Legislature amended MCL 750.535 reclassifying the crime of receiving and concealing stolen property of any value less than $1,000 as a misdemeanor. See MCL 750.535(4) and (5), as amended by 1998 PA 311.[2] However, for the purpose of the habitual offender statute, "a trial court may use a conviction of a crime that was a felony at the time it was committed to enhance a subsequent habitual offender charge even though the prior crime has been reclassified as a

_____

[2] 1998 PA 311 took effect on January 1, 1999.

misdemeanor." *People v Odendahl*, 200 Mich App 539, 543-544; 505 NW2d 16 (1993), overruled in part on other grounds by *People v Edgett*, 220 Mich App 686; 560 NW2d 360 (1996); see also *Ex parte Jerry*, 294 Mich 689, 691-692; 293 NW 909 (1940). Therefore, the trial court had authority to rely upon defendant's 1992 felony conviction of receiving and concealing stolen property more than $100.

Even if the trial court erred in relying on defendant's 1992 conviction of receiving and concealing stolen property more than $100, defendant's PSIR reported other felony convictions that the prosecution could have relied upon to seek an enhanced sentence. Defendant's PSIR established that he had a combination of three or more prior felony convictions and his convictions of armed robbery and AWIGBH constituted serious crimes under MCL 769.12(6)(c). Therefore, defendant cannot establish that the trial court erred by enhancing his sentence under MCL 769.12.

Defendant also contends that his equal protection rights were violated because he has been treated differently than a hypothetical out-of-state defendant convicted in 1992 of receiving and concealing stolen property more than $100. We disagree.

For this Court to render a statute constitutionally invalid, a defendant must make a "clearly apparent demonstration of unconstitutionality." *People v Skinner*, 502 Mich 89, 99-100; 917 NW2d 292 (2018), quoting *People v Harris*, 495 Mich 120, 134; 845 NW2d 477 (2014) (quotation marks omitted). That high standard is required because statutes are presumed to be constitutional and this Court has a "duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Skinner*, 502 Mich at 100, quoting *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

Defendant has not clearly demonstrated that MCL 769.12 is unconstitutional because it does not treat hypothetical out-of-state defendants differently than in-state defendants. MCL 769.12(1) provides that prior felonies may serve as predicate felonies, "whether the convictions occurred in this state or *would have been* for felonies or attempts to commit felonies in this state if obtained in this state[.]" (Emphasis added.) The statute plainly indicates that a court is required to treat out-of-state prior convictions as in-state prior felony convictions if they would have been such convictions in Michigan. Therefore, for an out-of-state defendant convicted of the crime of receiving and concealing stolen property more than $100 in 1992, a trial court could use that conviction as a predicate felony under MCL 769.12 because it would have been a felony in Michigan in 1992. Consequently, defendant cannot demonstrate that MCL 769.12 is unconstitutional.

## IV. JUROR DISMISSAL

Defendant contends that the trial court abused its discretion by dismissing one of the jurors after the trial had begun. We disagree.

The trial court's decision whether to remove or to excuse a juror during trial is reviewed for an abuse of discretion. *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

MCL 768.18(1) provides in relevant part:

> Any judge of a court of record in this state about to try a felony case which is likely to be protracted, may order a jury impaneled of not to exceed 14 members, who shall have the same qualifications and shall be impaneled in the same manner as is, or may be, provided by law for impaneling juries in such courts. All of those jurors shall sit and hear the cause. Should any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors so impaneled from further service, [the judge] may do so and the trial shall proceed, unless the number of jurors be reduced to less than 12.

A juror's failure to attend a court proceeding without being excused may be punishable as a contempt of court. MCL 600.1346(e). If a juror absents herself from the proceedings, a trial court does not abuse its discretion when it dismisses that juror because the court has broad discretion "to empanel a jury of not less than 12 but not more than 14, with further discretion to reduce the number to 12." *People v Bell*, 74 Mich App 270, 274; 253 NW2d 726 (1977) (citation omitted). Further, a court has the discretion to remove a juror who is "unable or unwilling to cooperate." *People v Tate*, 244 Mich App 553, 562; 624 NW2d 524 (2001).

In this case, Juror No. 14 lacked either the willingness or the ability to participate in the proceedings. The record reflects that she slept through the first afternoon of trial. Further, despite stating during jury selection that participating on the jury would not be a hardship to her, she failed to appear at the ordered time on the second day of trial and failed to call the court regarding her absence. The court clerk contacted her at home and directed her to attend the proceedings. Juror No. 14 called beck and requested removal from the jury. The trial court decided to excuse her because she lacked willingness to serve her duty. Juror No. 14's conduct established her inability and unwillingness to cooperate which justified the trial court's action. *Id*. The trial court, therefore, properly exercised its broad discretion by dismissing her from the jury. *Id*.

Defendant argues further that the trial court violated both MCR 2.511(D) and *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), when it dismissed Juror No. 14 from the jury. We disagree.

MCR 2.511(D) governs the process for impaneling a jury, not dismissal of a juror during trial. See MCR 6.412(A) ("MCR 2.510 and 2.511 govern the procedure for selecting and impaneling the jury."); *People v Allan*, 299 Mich App 205, 211; 829 NW2d 319 (2013), overruled in part on other grounds by *People v Cain*, 498 Mich 108; 869 NW2d 829 (2015) ("MCR 2.511 governs the procedure for impaneling the jury."). Therefore, defendant's contention regarding MCR 2.511(D) lacks merit.

Defendant's *Batson* challenge also fails. In *Batson*, the United States Supreme Court held that the prosecution may not exercise a peremptory challenge on a potential juror solely because of the juror's race. *Batson*, 476 US at 89. In analyzing a *Batson* challenge, a court must assess whether the defendant made a prima facie case of discrimination on the basis of race, then decide whether the prosecution presented a credible race-neutral explanation for the challenge.

-6-

*People v Knight*, 473 Mich 324, 336-337; 701 NW2d 715 (2005). The trial court must then determine whether the race-neutral explanation is a pretext for purposeful discrimination. *Id*. at 337-338.

In this case, the prosecution did not raise a peremptory challenge regarding Juror No. 14 who the trial court impaneled as a juror. The prosecution expressed satisfaction with the jury that included Juror No. 14. The trial court dismissed her because she lacked the ability and willingness to fulfill her jury duty and cooperate. Even defendant concedes that *Batson* "does not apply directly to the trial court's decision in this case." Instead, he contends that the court's decision to dismiss Juror No. 14 while later allowing another tardy juror to remain on the panel "appears to be disparate treatment . . . ." The record, however, reflects that the trial court did not dismiss the juror who came late to the third day of trial because it could not "go forward without an alternate juror[.]" No evidence in the record establishes any discriminatory reason for Juror No. 14's removal from the jury. Consequently, defendant's *Batson* challenge fails.

## V. PRIOR RECORD VARIABLE (PRV) AND OFFENSE VARIABLE (OV) SCORING

We review de novo issues of statutory interpretation, including those that involve the interpretation and application of the legislative sentencing guidelines. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016). The trial court's factual determinations for scoring under the sentencing guidelines are "reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. When calculating the sentencing guidelines, the trial court may consider all record evidence. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court may rely on reasonable inferences arising from the record evidence *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). The application of the facts to the law, or whether the facts are adequate to satisfy the statutory scoring conditions, is a question of statutory interpretation reviewed de novo. *Hardy*, 494 Mich at 438.

Defendant contends that the trial court erred in assessing 20 points for PRV 6 because he was a parolee, not a prisoner, at the time of the offense. The prosecution agrees that the trial court should have assessed defendant 10 points for PRV 6 as specified under MCL 777.56(1)(c). We agree that the trial court erroneously assessed 20 points for PRV 6 when it should have assessed 10 points. This correction, however, does not entitle defendant to resentencing because changes that do not alter a defendant's minimum sentencing guidelines range do not trigger resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). In this case, the trial court assessed defendant a total PRV score of 102 points. The jury convicted defendant of armed robbery, a Class A offense. See MCL 777.16y. The sentencing guidelines require placing a defendant at PRV Level F for scores in excess of 75 points. Correction of defendant's PRV 6 score reduces his PRV total to 92 points, which does not require changing his PRV Level. Accordingly, defendant is not entitled to resentencing. *Id*.

Defendant claims that the trial court erred in assessing 50 points for OV 7 on the ground that no evidence established that he engaged in conduct similarly egregious to sadism, torture, or excessive brutality. We disagree.

OV 7 addresses aggravated physical abuse of a victim during the commission of an offense. A sentencing court may assess 50 points for OV 7 if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1). "OV 7 is designed to respond to particularly heinous instances in which the criminal acted to increase [a victim's] fear by a substantial or considerable amount." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (quotation marks and citation omitted). The focus of OV 7 inquiry must be confined to the conduct that occurred during the sentencing offense. *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016).

To assess 50 points for OV 7, a trial court must determine whether the defendant treated his victim with sadism, torture, or excessive brutality, or similarly egregious conduct designed to substantially increase the victim's fear and anxiety during the offense. *People v Rodriguez*, ___ Mich App ___, ___; ___ NW2d ___ (2019), slip op at 3.[3] For assessing OV 7, the relevant inquiry must be "(1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444. The trial court should first determine a "baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue." *Id*. at 442-443. To do so, this Court must "consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied," to determine "the fear or anxiety associated with the minimum conduct necessary to commit the offense." *Id*. at 443.

In this case, the jury convicted defendant of armed robbery, the elements of which are "(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon." *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007). To complete the crime of armed robbery, therefore, defendant had to use force or violence against his victims or assault them, possess a weapon in a manner to lead his victims to believe he possessed a dangerous weapon, and take property from the store. Normal fear or anxiety associated with an armed robbery serves as the "baseline" associated with the minimum conduct necessary to commit an armed robbery. *Hardy*, 494 Mich at 442-443.

---

[3] The *Rodriguez* Court explained (1) that sadism is statutorily defined in MCL 777.37(3) as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification[,]" (2) this Court previously defined torture as "the act of inflicting excruciating pain, as punishment or revenge, as a means of getting a confession or information, or for sheer cruelty[,]" and (3) this Court previously defined excessive brutality as "savagery or cruelty beyond even the usual brutality of a crime." *Id*. at ___; slip op at 3 n 2 (quotation marks and citations omitted).

The evidence in this case established that defendant brandished a handgun when he entered the jewelry store and yelled that he was robbing the store. Defendant held his gun to Hunter's head and forced him onto the ground. When Chiappelli wrestled for Genright's gun, defendant shot and wounded Chiappelli. Defendant then threatened to kill Hunter if Chiappelli moved again. Such conduct by defendant went beyond that required to commit an armed robbery. Defendant's conduct placed Chiappelli and Hunter in imminent fear of death well beyond the natural fear or anxiety that would arise from being confronted by an armed robber.

While a "threat is a necessary element of the crime[,]" defendant's threats were not intended only to accomplish the armed robbery or ensure Chiappelli's compliance with defendant's demand for money or jewelry. *Rodriguez*, ___ Mich App at ___; slip op at 4 n 5. Defendant shot and wounded Chiappelli, an act beyond threat that was not necessary to accomplish the armed robbery. Additionally, as the trial court found at the sentencing hearing, defendant's threat to kill Hunter was in essence a "[threat] to kill a son in front of his father[.]" A preponderance of the evidence established that defendant intended to inflict "excruciating pain" or "cruelty beyond even the usual brutality" of armed robbery on Chiappelli. *Id*. at ___; slip op at 3 n 2. The fact that the jury also convicted defendant of AWIGBH, which required defendant to threaten force or violence with an intent to do great bodily harm less than murder,[4] also indicates that defendant engaged in conduct that went beyond the necessary minimum to complete the crime of armed robbery. Consequently, defendant engaged in conduct "designed to substantially increase the fear and anxiety a victim suffered during the offense." *Rosa*, 322 Mich App at 743, quoting MCL 777.37(1)(a). Given the substantial and compelling evidence of record, it is clear the trial court correctly assessed defendant 50 points for OV 7.

Defendant also argues that the trial court improperly assessed 15 points for OV 8 because defendant's and Genright's moving of Chiappelli and Hunter from the front of the store to the back rooms were practical movements done only to effectuate the robbery. We disagree.

OV 8 addresses victim asportation or captivity. MCL 777.38. A trial court may assess 15 points for OV 8 if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Any movement of a victim to a place of greater danger, even if that movement is incidental, qualifies as asportation under OV 8. *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017). Further, the statute does not require that the movement be greater than the conduct necessary to commit the sentencing offense. *Id*. "A victim is asported to a place or situation involving greater danger when moved away from the presence or observation of others." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014).

In this case, defendant moved Chiappelli and Hunter to a place of greater danger during the course of the robbery. As explained in *Chelmicki*, it makes no difference that moving them occurred incidentally to the robbery. *Id*. After defendant and Genright made Chiappelli open the

---

[4] The elements of AWIGBH are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

safe, they moved both Chiappelli and Hunter into the back room of the store where they expected to be killed at any point. Defendant's conduct served as the basis for the trial court's assessment of 15 points for OV 8. Therefore, the trial court did not err in this regard.

We affirm defendant's convictions and the sentences imposed by the trial court, but we remand so that the trial court may perform the ministerial task of correcting defendant's PRV 6 score. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford